UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

TRACY SCHOENADEL,

                              Plaintiff,                    COMPLAINT

         - against -

YOUGOV AMERICA, INC.                                PLAINTIFF  DEMANDS  A
                                                    TRIAL BY JURY

                              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

        Plaintiff Tracy Schoenadel ("Schoenadel" or "plaintiff") by her attorneys,

Vladeck, Raskin & Clark, P.C., complains of defendant YouGov America, Inc. ("YouGov" or

"defendant") as follows:

                              NATURE OF CLAIMS

        1.      Schoenadel is a highly successful marketing and research professional

with over 25 years of experience in the sponsorship and advertising research industry.

Schoenadel worked for defendant and its predecessors from August 2015 until March 2022,

when defendant constructively discharged her.  During her tenure at YouGov, Schoenadel had to

contend with a "boys club" atmosphere, where women, including herself, were denied

promotions and resources that defendant readily offered to men.  When Schoenadel complained

about defendant's unlawful discriminatory treatment of her and other women, defendant

retaliated against plaintiff by removing her responsibilities, decreasing her bonus, and further

denying her resources, making it clear to Schoenadel that she was not wanted at YouGov.

        2.      Plaintiff brings this action to remedy defendant's discriminatory and

retaliatory treatment.  Specifically, plaintiff brings this action to remedy violations of Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); New York State Human Rights Law, N.Y. Executive Law § 296 et seq. (the "State Law"); and the New York City Human Rights Law, Administrative Code of the City of New York § 8-107 et seq. (the "City Law").

JURISDICTON AND VENUE

3.      This Court has jurisdiction over plaintiff's Title VII claims under 28 U.S.C. § 1331 and 42 U.S.C. §2000e-5(f)(3).  In addition, as plaintiff is a resident of Connecticut and defendant's principal place of business and headquarters is located in California, and more than $75,000 is at issue, the jurisdiction of this Court over all claims is proper under 28 U.S.C. § 1332.

4.      Pursuant to 28 U.S.C. 1367, this Court has supplemental jurisdiction over plaintiff's State Law and City Law claims because these claims closely relate to the Title VII claims, having arisen from a common nucleus of operative facts such that all claims form part of the same case or controversy.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because the defendant regularly does business in New York, New York and some of the acts of discrimination and retaliation occurred within the Southern District of New York.

6.      Pursuant to Section 8-502(c) of the New York City Human Rights Law, plaintiff will cause to be served a copy of the Complaint on the City of New York Commission on Human Rights and the Corporation Counsel of the City of New York.

7.      Plaintiff filed a charge of discrimination and retaliation with the United States Equal Employment Opportunity Commission (the "EEOC") against defendant on or about March 14, 2022.  Additionally, plaintiff filed a supplemental charge of discrimination with the

1256506 v1

EEOC or about April 11, 2022.  On November 2, 2022, the EEOC issues plaintiff a notice of right to sue.

PARTIES

8.     Plaintiff is a woman who worked for defendant and its predecessors from August 2015 until March 2022.  She is a resident of Connecticut and worked for defendant in New York, New York.

9.     On information and belief, YouGov is a corporation organized under the laws of the State of Delaware with offices in New York, New York.

10.     On information and belief, YouGov is part of YouGov Plc, which is based in the United Kingdom.  YouGov is a global market research firm.

FACTUAL ALLEGATIONS

Plaintiff's Background

11.     Schoenadel has over 25 years of experience in the sponsorship and advertising research industry.

12.     Schoenadel earned a bachelor's degree (1987), master's degree (1989), and doctoral degree (all but dissertation) (1992) from West Virginia University's College of Physical Activity and Sport Sciences.

13.     Prior to working at YouGov, Schoenadel was U.S. Vice President for Sports Intelligence at Kantor Media for 15 years and was Executive Director for the ESPN Sports Poll for 11 years.

Plaintiff's Work at YouGov

14.     Schoenadel was hired as Senior Vice President ("SVP") of Sports for North America by SMG Insight ("SMG"), a sports marketing research firm originally based in London, U.K., which then moved to Dubai, United Arab Emirates.

15.     SMG was owned by Frank Saez.

16.     During Schoenadel's time with SMG, she performed work for YouGov. YouGov, which owned 20% of SMG, paid Schoenadel and then billed SMG for her compensation.

17.     Schoenadel was so successful in building the Sports business that in or about April 2020, YouGov purchased the remaining 80% of SMG from Saez, ahead of an original acquisition target date in 2021.

18.     Saez remained after the acquisition, with the title of Chief Revenue Officer ("CRO"), and Schoenadel continued to report to Saez.

19.     At the time of the acquisition, Schoenadel retained her title as SVP of Sports for North America, and was also appointed as Head of New Business, initially for the U.S. and U.K.   Later Schoenadel was told to focus only on building the U.S. business. Schoenadel had two roles and separate commissions from each line of business.

20.     When New Business was given to Schoenadel, it was in terrible shape.  It was not fully staffed until January 2021.  In light of the challenges, Schoenadel's performance for the unit was outstanding.

21.     Throughout Schoenadel's employment her performance was excellent.

1256506 v1

22.     Although YouGov is an old-boys club, with men in all senior leadership positions, Schoenadel had been extremely successful.  Schoenadel also had very limited turnover on her staff and one of the most diverse staffs in the organization.

<u>YouGov Discriminates Against Plaintiff</u>

23.     In Spring 2021, YouGov began discussing a reorganization.  Schoenadel told Saez that she wished to become either the global Deputy CRO or Chief Executive Officer ("CEO") of Americas.  Schoenadel said that CEO of Americas was her first choice.  Schoenadel had the primary skills of a regional CEO, including a proven track record of supporting sales and operations, closing business, producing high profit margins, solving problems, and managing and retaining employees.

24.     During the Spring 2021, although no formal announcements were made, Schoenadel heard that certain men were promised senior roles, including CEO of the Americas.

25.     In May 2021, global CEO Stephan Shakespeare made a trip from Dubai to the U.S. to discuss the new positions in the reorganization.  Shakespeare spent a day meeting with Scott Horowitz, who reported to Schoenadel, and another day with Ray Martin, Group Chief Client Officer, in Los Angeles.  Shakespeare met with Schoenadel for only 30 minutes in YouGov's New York City office.

26.     On July 10, 2021, YouGov announced the positions in the reorganization. The Deputy CRO position was not filled.  Martin was appointed CEO of Americas.  Schoenadel had over a decade more experience in the research industry than Martin.

27.     Schoenadel was given the position of Chief Customer Officer ("CCO"). When Schoenadel expressed disappointment to Saez, he told her that CCO was a bigger, better position.

1256506 v1

28.     As part of Schoenadel's CCO role, she was supposed to have client servicing, custom client servicing, and data products under her.  All those responsibilities were given to Schoenadel and then quickly taken away from her.  Custom client servicing remained with Martin.  Data products was given to Evan Williams, who had no experience in the area.  At least initially, Schoenadel was told she would retain client servicing for Sports, but that she would not interact with clients outside of Sports.  In all Schoenadel's years in the industry, she had never heard of a CCO role that did not have contact with clients.

29.     In the ensuing months, the organization chart was revised about a dozen times, each time to give male colleagues more responsibility.  Schoenadel was not allowed any of the oversight that would go along with the sort of senior leadership position she supposedly held.  Saez told Schoenadel that Martin blocked her efforts to assume appropriate responsibilities and sought to diminish her role.

30.     In mid-summer 2021, Williams told Schoenadel that Martin had discussed with him taking Sports client servicing away from her and giving it to Williams.  Williams told Martin that Sports client servicing was one of the best models in the company and that if it wasn't broken, to leave it alone.

31.     Martin and other men in senior leadership also began to look for issues to criticize Schoenadel, including things Schoenadel had done for years without objection and things for which men faced no consequences.

32.     YouGov's fiscal year ends on July 31.  In early August 2021, Schoenadel learned that much of the sales in her New Business unit were credited to other divisions run by men.  Although New Business sales were about $19 million, Schoenadel was told the unit was being credited with only $15.4 million in sales.

1256506 v1

33.     On August 4, 2021, YouGov held its year-end review.  It was attended by Chief Financial Officer ("CFO") Alex McIntosh, Shakespeare, Chief Operating Officer ("COO") Sundip Chahal, Martin, leaders of the U.S. sales territory and finance, and Schoenadel.  U.S. sales number overall exceeded the goal.  During the meeting, McIntosh singled out Schoenadel's New Business unit for criticism for not making goals, using the falsely lowered numbers.  He told everyone on the call that Schoenadel had cost him his bonus.  Men whose units did not meet their goals were not criticized, including Martin.  One of the men who reported to Schoenadel was praised by Shakespeare and McIntosh, with no credit given to Schoenadel for helping Schoenadel's direct report increase his sales.  McIntosh criticized Schoenadel for New Business meetings held in New York City in July 2021, which were organized by men, not Schoenadel, and which were approved by Saez.  After the August 4th meeting, several people told Schoenadel they were very uncomfortable with McIntosh's tone with Schoenadel and with him blaming Schoenadel.

34.     On August 5, 2021, Schoenadel was invited to a meeting with the title "Process and LTIP [Long Term Incentive Program] Meeting – Tracy."  The meeting was with Shakespeare, McIntosh, Chahal, and Saez.  In the meeting, Schoenadel was falsely blamed for allegedly poor fiscal year 2021 performance.  They falsely accused Schoenadel of mishandling a nondisclosure agreement.   They falsely accused Schoenadel of double-counting and manipulating sales numbers, when it was clear that Schoenadel had no control over how business was counted.  Schoenadel had two roles, Sports and New Business, and the Finance department decided how to allocate the revenue.  McIntosh again chastised Schoenadel for the July meetings she had not organized.  They told Schoenadel that she would not receive any of the LTIP award that YouGov had proposed to her in July 2020.

35.     In Schoenadel's Sports and New Business roles, Schoenadel had bonus plans that were akin to commissions.  For fiscal year 2020, Schoenadel was given bonuses for each of her roles.  On October 31, 2021, Saez told Schoenadel that she would not receive her fiscal year 2021 Sports bonus, which should have been $93,301, because McIntosh denied it. The men who reported to Schoenadel on the Sports team were paid their bonuses.  Saez told Schoenadel it was because of the shortfall in the revenue for New Business, even though Schoenadel's pay for each role had always been separate.  Saez also told Schoenadel that McIntosh wanted her fired and was threatening to do so.

36.     On or about November 5, 2021, Schoenadel spoke to Saez because Williams had told her that Martin was again speaking to him about taking Sports client serving away from her.  Saez told Schoenadel that he pushed back, but confirmed that Martin was trying to remove Schoenadel's responsibilities.

37.     In November 2021, senior leaders went around Schoenadel to get information about a deal with the NBA and criticized Schoenadel for matters that were not questioned on deals overseen by men.

38.     In November 2021, Schoenadel was awarded half of the LTIP that had been targeted for her in July 2020.

39.     Schoenadel usually received her compensation plans in October of each fiscal year.  Schoenadel never received any compensation plan for fiscal year 2022, which began on August 1, 2021.  The men on the Sports team that Schoenadel oversaw received commissions for the first two quarters, totaling over $300,000.   The Company never paid Schoenadel commissions for fiscal year 2022.

40.     In fall 2021, Schoenadel's share of administrative support was taken away from her and provided to men.

YouGov's Pattern of Gender Bias

41.     Schoenadel has not been the only woman targeted by Martin.  He was instrumental in getting the Key Accounts Director dismissed, even though she did not report to him.

42.     Martin denied a promotion to the Research Analyst of SRG, who filed an internal grievance about the denial.  The Research Analyst also lodged a complaint about the sexist comment set forth in the following paragraph.  Schoenadel has heard that Martin, McIntosh, and Chahal made jokes about the Research Analyst's complaint.  The Research Analyst has left YouGov.  In mid-December 2021, Martin came to Schoenadel's desk and told her that there was a video she had to see.  Schoenadel believes it was from the Research Analyst's exit interview and the brief part Schoenadel heard related to the Research Analyst's complaint concerning the promotion she was denied.  Schoenadel told Martin that she should not be viewing the video and walked away.  Martin stood there laughing at everything the Research Analyst was saying.

43.     Martin was not the only man who displayed gender bias.  In April 2021, Hamish Brockelebank, a man in a leadership position, introduced a global internal webinar by stating, "My part of the webinar should be like a woman's skirt; long enough to cover the subject and short enough to create interest."[1]  There was, understandably, an outcry within YouGov about the blatantly sexist statement.  While Brockelebank issued an apology, to Schoenadel's

---

[1] While not an excuse, the statement was apparently based on a quote from Winston Churchill, although Brockelebank did not attribute it to Churchill.

knowledge he was not disciplined in anyway.  Schoenadel was told that employees who complained about Brockelebank's comment were orally reprimanded for complaining.

44.     In December 2021, during a global Town Hall meeting, several employees questioned the number of women leaving YouGov, especially senior women leaders.  For example, over the previous 18 months, the Chief Marketing Officer, Chief Human Resources ("HR") Officer, General Manager-UK, and CEO for Europe had left.

<u>YouGov Retaliates Against Plaintiff</u>

45.     On November 11, 2021, Schoenadel made a formal complaint to Saez and Global Head of HR Josephina Smith about the actions taken against her and stating that Schoenadel believed she was being discriminated against based on her gender, age, and sexual orientation.  No action was taken in response to Schoenadel's complaint.

46.     On December 23, 2021, Schoenadel filed an internal grievance with HR alleging gender discrimination, while also noting that there had been comments made about her age and sexual orientation.

47.     Smith acknowledged receipt of Schoenadel's grievance on January 2, 2022.

48.     Schoenadel had previously had weekly meetings with Martin and other senior leaders, but in early January 2022, Martin canceled the meetings indefinitely.

49.     On January 10, 2022, Schoenadel had a call with Smith, at Smith's invitation.  Smith told Schoenadel that she would treat her grievance as informal unless Schoenadel assured her that she wanted to stay at YouGov.  She also warned Schoenadel that the grievance process would be drawn out over several months.

50.     In follow up communications, Schoenadel told Smith that she had not been looking to leave and asked if they were proposing a severance package for her.  Schoenadel also let her know that if the grievance would take months, she would pursue resolution outside of YouGov at the same time.

51.     On January 14, 2022, Smith told Schoenadel that YouGov was proceeding with her grievance and that it would take three weeks.

52.     On January 17, 2022, Schoenadel advised Smith she had retained counsel.

53.     On January 24, 2022, YouGov's attorney advised Schoenadel's counsel that the grievance process would take a few weeks and that they would interview Schoenadel as part of the investigation for the grievance process.

54.     Schoenadel was interviewed by YouGov's counsel on January 31, 2022, for about 85 minutes.  Schoenadel shared the information that is in this Complaint, along with additional detail about some of the incidents.

55.     On February 2, 2022, Schoenadel had a Zoom meeting with HR in which she was asked to identify successors for her roles with Sports and as CCO.  On information and belief, others were not asked to do so.

56.     After Schoenadel filed her grievance, Schoenadel was further isolated and excluded.  Schoenadel was not invited to leadership meetings that should include her.  Senior leaders did not email or call Schoenadel, other than an occasional communication from Saez. When Schoenadel request information, she was ignored.

57.     Schoenadel's attorney filed a Charge of discrimination and retaliation with the EEOC on her behalf on March 14, 2022.  That same day, Schoenadel's attorney sent a copy of her charge to YouGov's counsel by email.

1256506 v1

58.     While Schoenadel had been excluded and isolated prior to filing the charge, from March 14 to 16, 2022, Schoenadel experienced and learned of actions that convinced her that she had no future with YouGov and that staying would seriously damage her career.

59.     Over the course of March 14 to 15, 2022, Saez asked Schoenadel to draft an email about salespeople in Sports who had recently left.  After Schoenadel drafted the email, Saez approved the content, but said that he did not want Schoenadel to send it to clients.  Instead, he asked one of Schoenadel's direct reports to send it to clients.  Saez's rationale was that Schoenadel would not be with YouGov much longer.  Saez also met with Schoenadel's direct report about the salespeople's departures without involving Schoenadel, or even telling Schoenadel about it.

60.     Schoenadel also learned that Saez spoke with a sector head of e-sports about taking over Sports in the U.S., which was one of Schoenadel's roles.  The e-sports sector head attended an emergency meeting of the Sports client servicing team when Saez visited the YouGov New York City office on March 15, 2022.  The e-sports sector head was not originally invited to the meeting, but had knowledge of it.  The e-sports sector head then reached out to Schoenadel to ask her to attend.

61.     Saez provided one of the men who reported to Schoenadel with a compensation plan, without consulting with Schoenadel about the plan.  As of March 16, 2022, Schoenadel still had not been given a compensation plan.

62.     On March 15, 2022, one of the members of Schoenadel's Commercial Proposals team gave a presentation about the Company's new solution for creating proposals. The presentation was over Zoom to Saez, Martin, and others.  Saez directed all questions to

1256506 v1

Schoenadel's team member, and told everyone on the call that they should direct any questions about the new solution to Schoenadel's team member.  He did not mention Schoenadel, or her role leading Commercial Proposals, at all.

63.    In early March 2022, after a key member of Schoenadel's staff left, Schoenadel sought permission from Saez and COO Chapel to give raises to two of Schoenadel's direct reports in order to ensure YouGov retained them.  Schoenadel was given authority to provide raises, but below the levels she had requested.  YouGov generated letters that were given to Schoenadel's direct reports with the lower raises.  In contrast, men who have requested raises to keep good employees had been given permission to offer such raises.  Schoenadel later learned that within a week of her constructive discharge, YouGov gave Schoenadel's former direct reports the larger raises Schoenadel had requested and been denied.

64.    It was clear to Schoenadel that she was not wanted at YouGov.  Senior management acted as if Schoenadel was already gone.  Their very obvious exclusion of Schoenadel and talking to others about replacing Schoenadel was causing serious damage to Schoenadel's reputation, including with employees who purportedly reported to Schoenadel. Schoenadel came to the conclusion that she had no choice but to leave YouGov if she wanted to avoid substantial damage to her career.  In addition, the stress had become unbearable.

65.    On March 16, 2022 at 4:50 p.m., Schoenadel sent an email to Saez and Josephina Smith, head of HR for global and U.S., stating, "I am aware that management has spoken to colleagues about replacing me.  I have also been cut out of discussions relating to the people and areas I supposedly manage.  YouGov has made it clear that I am not wanted.  I cannot allow YouGov's retaliation to further damage my career and reputation.  I therefore resign, effective immediately."

66. As of March 16, 2022, Schoenadel had not been provided any information about the status of her grievance.

67. After Schoenadel resigned, YouGov appointed the e-sports sector head to be the head of the Sports division, as Saez had previously proposed.

68. On July 26, 2022, Schoenadel received a letter from YouGov dated July 18, 2022, stating that it had not substantiated the grievance she submitted in December 2021. This was the first Schoenadel heard about the grievance since her interview in January 2022.

FIRST CAUSE OF ACTION
Title VII: Gender Discrimination

69. Plaintiff repeats and realleges paragraphs 1 through 68 of this Complaint as if fully set forth herein.

70. By the acts and practices described above, defendant has discriminated against plaintiff in the terms and conditions of her employment on the basis of her gender, in violation of Title VII.

71. Defendant has acted with malice and/or reckless indifference to plaintiff's statutorily protected rights under Title VII.

72. As a result of defendant's discriminatory acts, plaintiff has suffered, is suffering, and will continue to suffer irreparable injury, monetary damage, mental anguish, emotional distress, humiliation, and other compensable damage unless and until this Court grants relief.

SECOND CAUSE OF ACTION
State Law: Gender Discrimination

73. Plaintiff repeats and realleges paragraphs 1 through 72 as if fully set forth herein.

1256506 v1

74.     By the acts and practices described above, defendant has discriminated against plaintiff in the terms and conditions of her employment on the basis of her gender, in violation of the State Law.

75.     Defendant has acted intentionally and with malice or reckless indifference to plaintiff's statutorily protected rights under the State Law.

76.     As a result of defendant's discriminatory acts, plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages unless and until this Court grants relief.

<u>THIRD CAUSE OF ACTION</u>
<u>City Law: Gender Discrimination</u>

77.     Plaintiff repeats and realleges paragraphs 1 through 76 as if fully set forth herein.

78.     By the acts and practices described above, defendant has discriminated against plaintiff in the terms and conditions of her employment on the basis of her gender, in violation of the City Law.

79.     Defendant engaged in discrimination with willful or wanton negligence, with recklessness, and/or with a conscious disregard of plaintiff's rights or conduct so reckless that it amounts to such disregard.

80.     As a result of defendant's discriminatory acts, plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages unless and until this Court grants relief.

<u>FOURTH CAUSE OF ACTION</u>
<u>Title VII: Retaliation</u>

1256506 v1

81.     Plaintiff repeats and realleges paragraphs 1 through 80 as if fully set forth herein.

82.     By the acts and practices described above, defendant retaliated against plaintiff for her opposition to unlawful discrimination under Title VII in violation of Title VII.

83.     Defendant acted with malice and/or reckless indifference to plaintiff's statutorily protected rights under Title VII

84.     As a result of defendant's discriminatory acts, plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages unless and until this Court grants relief.

FIFTH CAUSE OF ACTION
State Law: Retaliation

85.     Plaintiff repeats and realleges paragraphs 1 through 84 as if fully set forth herein.

86.     By the acts and practices described above, defendant retaliated against plaintiff for her opposition to unlawful discrimination in violation of the State Law.

87.     Defendant has acted intentionally and with malice or reckless indifference to plaintiff's statutorily protected rights under the State Law.

88.     As a result of defendant's discriminatory acts, plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages unless and until this Court grants relief.

SIXTH CAUSE OF ACTION
City Law: Retaliation

89.     Plaintiff repeats and realleges paragraphs 1 through 88 as if fully set forth herein.

1256506 v1

90.     By the acts and practices described above, defendant retaliated against plaintiff for her opposition to unlawful discrimination in violation of the City Law.

91.     Defendant engaged in retaliation with willful or wanton negligence, with recklessness, and/or conscious disregard of plaintiff's rights or conduct so reckless that it amounts to such disregard.

92.     As a result of defendant's discriminatory acts, plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages unless and until this Court grants relief.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, plaintiff respectfully requests that this Court enter a judgment:

a.     declaring that the acts and practices complained of herein are in violation of the Title VII, State Law, and the City Law;

b.     enjoining and permanently restraining these violations;

c.     directing defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect plaintiff;

d.     directing defendant to place plaintiff in the position she would have occupied but for defendant's discriminatory and retaliatory conduct and making her whole for all earnings and other benefits she would have received but for defendant's discriminatory treatment, including, but not limited to, wages, bonuses, pension, and other lost benefits;

e.     directing defendant to pay plaintiff compensatory damages, including damages for emotional distress, humiliation, and pain and suffering;

f.     directing defendant to pay plaintiff punitive damages;

17

g.     awarding plaintiff her reasonable attorneys' fees and costs;

h.     awarding plaintiff such interest as is allowed by law, and damages for any

adverse tax consequences stemming from an award; and

i.     granting such other and further relief as the Court deems necessary and

proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff hereby demands, pursuant to Rule 38(b) of the Federal Rules of Civil

Procedure, a trial by jury in this action.

Dated: New York, New York
       December 2, 2022

VLADECK, RASKIN & CLARK, P.C.

By:   /s Anne L. Clark
      Anne L. Clark
      Brandon R. White
      Attorneys for Plaintiff
      565 Fifth Avenue, 9th Floor
      New York, New York 10017
      (212) 403-7300

18