January 12, 2024

**By ECF**
Honorable Arun Subramanian
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   <u>Tracy Schoenadel v. YouGov America, Inc., Case No. 22-CV-10236</u>

Dear Judge Subramanian,

The parties write jointly pursuant to the Court's order on January 10, 2024 regarding a discovery dispute. Specifically, whether this Court should compel Defendant YouGov America, Inc. to produce internal documents related to its investigation into an internal grievance Plaintiff Tracy Schoenadel filed when employed by Defendant.

I.      PLAINTIFF'S POSITION

In December 2021, Schoenadel filed an internal grievance ("the grievance") with YouGov's Human Resources department alleging many of the instances of gender discrimination described in the Amended Complaint. (Amended Complaint ("Am. Compl."), ¶ 47, ECF No. 20) On January 14, 2022, YouGov informed Schoenadel that it was proceeding with her grievance and that the process that it hoped to "complete in the next 3 weeks" (Ex. A; Am. Compl. ¶ 52)

On January 24, 2022, YouGov's counsel notified Schoenadel's counsel that it would interview Schoenadel "as part of the grievance process for YouGov." (Ex. B; <u>see also</u> Am. Compl. ¶ 54) (Plaintiff's counsel did not attend Schoenadel's interview) As part of Defendant's investigation into Schoenadel's grievance, YouGov's counsel also interviewed several of Schoenadel's then-coworkers, including Scott Horowitz. YouGov's counsel interviewed Schoenadel on January 31, 2022. (Am. Compl. ¶ 55)

Schoenadel separated from YouGov on March 16, 2022. (Am. Compl. ¶ 66) As of that date, YouGov had not provided Schoenadel with any information regarding the status of her grievance and Plaintiff questions why the investigation took several months to complete. (<u>Id.</u> ¶ 67) While there never was a hearing related to Schoenadel's grievance, under YouGov's grievance policy, "[i]f any evidence is gathered prior to the [grievance] hearing, the member of staff who raised the grievance will be given a copy in advance of the hearing so that they can consider their response." (Ex. C) On July 26, 2022, by letter dated July 18, 2022, YouGov informed Schoenadel that it had not substantiated her grievance that she submitted in December 2021. (Am. Compl. ¶ 69)

Plaintiff has requested from Defendant documents concerning its investigation into Plaintiff's internal grievance. While Defendant has produced a final report, Defendant has refused to produce any of the underlying documents related to its investigation, including interview notes or memorandum. Defendant claims that such documents and communications are protected by the attorney word product doctrine and/or attorney client privilege.

Hon. Arun Subramanian
January 12, 2024
Page 2

In the corporate context, the employer must establish all the elements of attorney-client privilege, including that a predominate purpose of the communication was to provide legal advice to the corporation. See In re Cnty. of Erie, 473 F.3d 413, 421-23 (2d Cir. 2007) "[T]he mere fact that a communication is made directly to an attorney, or an attorney is copied on a memorandum, does not mean that the communication is necessarily privileged." Koumoulis v. Indep. Fin. Mktg. Grp., Inc., 295 F.R.D. 28, 37 (E.D.N.Y. 2013), aff'd, 29 F. Supp. 3d 142 (E.D.N.Y. 2014).  Analysis of privilege must "proceed cautiously, recognizing that the application of the privilege 'risks creating an intolerably large zone of sanctuary since many corporations continuously consult attorneys.'" Ovesen v. Mitsubishi Heavy Indus. Of Am. Inc., No. 04-CV-2849 (JGK)(FM), 2009 WL 195853, at *3 (S.D.N.Y. Jan. 23, 2009) (quoting First Chicago Int'l v. United Exch. Co., 125 F.R.D. 55, 57 (S.D.N.Y. 1989)). Additionally, any party asserting the work product doctrine must demonstrate that the documents or materials were "prepared in anticipation of litigation." AIU Ins. Co. v. TIG Ins. Co., No. 07CIV.7052 (SHS)(HBP), 2008 WL 4067437, at *7 (S.D.N.Y. Aug. 28, 2008), modified on reconsideration, No. 07 CIV. 7052 (SHS)(HBP), 2009 WL 1953039 (S.D.N.Y. July 8, 2009). Here, YouGov has not met its burden of establishing the elements of privilege or work product. Moreover, even if YouGov could meet the standards, it has waived any arguable privilege.

   A.   Documents Are Not Privileged

Defendant cannot establish that notes and memoranda related to its investigation into Plaintiff's grievance are privileged, as Defendant's investigation was done pursuant to its internal policies, which required YouGov to provide Schoenadel with evidence obtained in its investigation, such as notes and memorandum related to interviews YouGov conducted. See Allied Irish Bank, 240 F.R.D. at 106 ("work product protection is not available for documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of litigation") (citation and internal quotation omitted). Indeed, Defendants counsel's January 24, 2022 email to Plaintiff's counsel was clear that she would be conducting the interview of Ms. Schoenadel not to prepare YouGov for litigation, but "*as part of the grievance process for YouGov.*" (Ex. B) (*emphasis added*).[1]

   B.   Defendant Has Waived Any Privilege

Even if Defendant's investigation documents were privileged, which they are not, YouGov's affirmative defenses to Plaintiff's claims claiming good faith (See Amended Answer ("Am. Answer") (April 6, 2023), ¶¶ 103, 121 ECF No. 21), waive privilege, as Defendant stated it intends to use the investigation as part of its defense.

As the Second Circuit has held, if a defendant "'asserted his good faith, the jury would be entitled to know the basis of his understanding that his actions were legal.'"  In re County of Erie, 546 F.3d

---

[1] To the extent Defendant's claim that interview notes are protected because its counsel conducted the interviews, courts have found it proper to question those attorneys about their role in investigations. See Pray v. New York City Ballet Co., No. 96 CIV. 5723 RLC, 1998 WL 558796, at *1 (S.D.N.Y. Feb. 13, 1998).

Hon. Arun Subramanian
January 12, 2024
Page 3

222, 228 (2d Cir. 2008) (quoting <u>United States v. Bilzerian</u>, 926 F.2d 285, 292 (2d Cir. 1991))[2]; <u>see also</u> <u>Scott v. Chipotle Mexican Grill, Inc.</u>, 67 F. Supp. 3d 607, 611 (S.D.N.Y. 2014) (privilege waived because defendant's claim of good faith could be evaluated only by examining the disputed communications, even when defendant has not expressly invoked counsel's advice); <u>Sec. & Exch. Comm'n v. Honig</u>, No. 18 CIV. 8175 (ER), 2021 WL 5630804, at *14 (S.D.N.Y. Nov. 30, 2021). Accordingly, YouGov's affirmative defense to Plaintiff's claims waive the privilege, if any actually existed.

Also, during Defendant's deposition of Horowitz on December 19, 2023, Defendant asked Horowitz a series of questions related to YouGov's interview of him as part of its investigation into Schoenadel's grievance, including whether he remembered specific questions asked during his interview and what he told the investigator. (<u>See</u> Transcript of Scott Horowitz's December 19, 2023 deposition, previously emailed to this Court on January 10, 2024, p. 65, 67) By questioning Horowitz about what was said during his interview, Defendant has put those communications at issue and waived its privilege claim. Accordingly, Plaintiff should be entitled to receive any interview notes or recordings. <u>See</u> <u>Koumoulis</u>, 295 F.R.D. at 40 (E.D.N.Y. 2013) ("Both the attorney-client and work-product privileges may be waived if a party puts the privileged communication at issue by relying on it to support a claim or defense.").

Furthermore, fairness requires that Plaintiff be provided the undisclosed information. Defendant's counsel has asserted that YouGov intends to use communications from Horowitz's grievance interview and deposition testimony to challenge the veracity of his statements. Plaintiff disagrees that whether Horowitz lied in his interview is "undisputed," as Defendant suggests. Therefore, the underlying information related to Horowitz's interview, such as interview notes or memorandum, is critically relevant to the case, particularly as it is put at issue by YouGov. <u>See</u> <u>John Wiley & Sons, Inc. v. Book Dog Books, LLC</u>, 17 F. Supp. 3d 400, 406 (S.D.N.Y. 2014) (granting motion to compel, finding fairness dictated that plaintiff be allowed to question defendant about privileged communications related to defense); <u>see also</u> <u>William Tell Servs., LLC v. Cap. Fin. Plan., LLC</u>, 46 Misc. 3d 577, 583(Sup. Ct. 2014) ("[A]t issue waiver of privilege occurs where a party affirmatively places the subject matter of its own privileged communication at issue in litigation, so that invasion of the privilege is required to determine the validity of a claim or defense of the party asserting the privilege, and application of the privilege would deprive the adversary of vital information.") (<i>citation and quotation omitted</i>); <u>Gruss v. Zwirn</u>, 276 F.R.D. 115, 140 (S.D.N.Y. 2011), <u>rev'd in part,</u> No. 09 CIV. 6441 PGG MHD, 2013 WL 3481350 (S.D.N.Y. July 10, 2013) (privilege may be waived by selective disclosure, since a party may not rely on the protection of the privilege regarding damaging communications while disclosing other self-serving communications). For the reasons set forth above, this Court should order Defendant to produce the underlying documents related to its investigation into Plaintiff's grievance.

---

[2] In <u>Erie</u>, the Court found no waiver because the government-actor qualified immunity test—which is not at issue in this case—is an objective one. 546 F.3d at 229.  The Court contrasted the facts before it with defendants who assert a subjective, "good faith" defense. <u>Id</u>.

Hon. Arun Subramanian
January 12, 2024
Page 4

## II.   DEFENDANT'S POSITION

On December 23, 2021, just before the holidays, Tracy Schoenadel ("Plaintiff") submitted an internal grievance via e-mail correspondence to YouGov America Inc.'s ("YouGov") Human Resources Business Partner – US, Johneé Moore, and Head of Human Resources – Global, Josephina Smith (the "Grievance").  Directly following the holidays, on January 2, 2022, Ms. Smith responded to Plaintiff, acknowledging receipt of the Grievance and advising that Ms. Smith would return to work on January 10, 2022, and would advise Plaintiff of next steps at the time. Following Plaintiff and Ms. Smith's meeting on January 10, on January 11, 2022, Plaintiff advised Ms. Smith, "[g]iven that [Ms. Smith] said the grievance process can take many months, [Plaintiff] will also start the process externally, by seeking counsel to file with a governmental agency at the same time."  *See* Exhibit D, YGA001942.

On January 14, 2022, Plaintiff advised Ms. Smith she obtained legal counsel and provided her counsel's contact information, requesting YouGov direct all communications moving forward to her legal counsel.  *See* Exhibit A, YGA001953.  As this was not a standard grievance, given Plaintiff informed YouGov she had retained and was represented by counsel, as well as that she was going to pursue an external charge of discrimination, the following day, January 15, 2022, YouGov retained outside counsel to investigate Plaintiff's allegations.

Shortly thereafter, on January 24, 2022, YouGov's outside counsel reached out to Plaintiff's counsel to set up an interview of Plaintiff.  YouGov's outside counsel interviewed Plaintiff on January 31, 2022, for around 90 minutes.  YouGov's outside counsel interviewed nine total individuals as part of the investigation, some twice.  The investigation was still pending when Plaintiff resigned from YouGov on March 16, 2022, including an additional interview being conducted and the reviewing of applicable documentation.

### A.   Investigation Attorneys' Notes Are Privileged

In this discovery dispute, the only documents at issue are attorney's notes from the investigation, which falls squarely within the attorney-client privilege and the attorney work product doctrine. Contrary to Plaintiff's assertions, there are no memorandums or recordings related to the investigation that have not already been produced. Plaintiff alleges that the attorney's notes are not privileged but cites to cases that differ drastically from the case at hand, where in-house counsel was used or where an attorney was used as a business consultant. For example, in *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.,* the investigation was primarily done internally, and outside counsel was only used to "supervise and direct the internal investigations primary as an adjunct member of Defendant's human resources team." 295 F.R.D. 28, 44 (E.D.N.Y. 2013). In *Ovesen v. Mitsubishi Heavy Indus. Of Am. Inc,* the attorney was both the general counsel and the vice-president of the Company. The documents in question were business-related communications between this Vice President/Counsel and other corporate officers, where legal advice was only contained in one paragraph and the Court held that the communications must be produced, but that paragraph with legal advice to be redacted. No. 04-CV-2849 (JGK)(FM), 2009 WL 195853, at *4 (S.D.N.Y. Jan. 23, 2009). Lastly, in *In re County of Erie,* Erie County relied on the Assistant Erie

Hon. Arun Subramanian
January 12, 2024
Page 5

County Attorney for advice following a legal claim in which the Second Circuit held that the disputed emails sent by the attorney to the client were generated for the predominant purpose of legal advice and not policy making or administrative purposes, and thus fell under the attorney-client privilege. 473 F.3d 413, 422 (2nd Cir. 2007).

Clearly, the cases Plaintiff cites to are inapplicable to the facts at hand. Here, the investigation attorney's notes were not created in the ordinary course of business irrespective of litigation. This was not a typical internal grievance. Plaintiff made it clear to YouGov shortly after submitting her grievance that she retained counsel and was exploring pursuing her claims externally. On January 11, 2022, Plaintiff informed YouGov that she was retaining counsel and would be filing a claim with a governmental agency. *See* Exhibit D.  At that point, instead of pursuing an ordinary internal investigation, YouGov retained outside counsel to conduct a thorough investigation as there was a likelihood of litigation.  Ex. D.  Unlike the cases Plaintiff cites to, the attorney did more than act as "an adjunct member of the Defendant's human resources team".  The outside counsel created notes for outside counsel's use that fall clearly within the attorney work product doctrine.

Courts have repeatedly held that attorney's notes as part of an internal investigation into wrongdoing are privileged. *See e.g. In re Grand Jury Subpoena,* 599 F.2d 504, 510-11 (2nd Cir. 1979) (finding that the first investigation which was "conducted primarily by non-lawyer senior officials" was not privileged, but the second investigation, conducted by counsel, was privileged); *Carter v. Cornell University,* 173 F.R.D. 92, 95 (S.D.N.Y. 1997) (holding that the interviews conducted by the attorney and the notes taken from the interviews were protected under the attorney-client privilege and work product privilege finding that "communications made between an attorney and a corporate client's employees are privileged so long as they are made to attorneys (or their representatives) for the purpose of securing legal advice and concern matters within the scope of the employees' corporate duties.").  Plaintiff's argument would imply that any time an employer has a policy to investigate its claims, no documents related to the investigation could ever be subject to privilege.  This would eviscerate essential components of attorney-client privilege and the work product doctrine and would be strongly against public policy.

B.  Defendant Has Not Waived Any Privilege

The only aspects of the investigation the Defendant intends to rely on are:

1.  YouGov promptly began an investigation following Plaintiff's complaint,

2.   Plaintiff resigned during the pendency of the investigation, and

3.  Scott Horowitz lied in his statements during the investigation and Plaintiff knew Mr. Horowitz lied and applauded him and did not report the deception.

There is nothing in the attorney's notes that would shed light on these three issues because none of these facts are disputed. It is undisputed that an investigation was started in January 2022. It is undisputed that the investigation was ongoing when Plaintiff resigned. And most importantly, it is undisputed that Mr. Horowitz admitted to lying during the investigation, as he has already testified to this. (*See* Transcript of Scott Horowitz's December 19, 2023 Deposition, previously emailed to

Hon. Arun Subramanian
January 12, 2024
Page 6

this Court on January 10, 2024, p. 356.) Defendant has already produced the entire unredacted report of the investigation.

Courts have long recognized the strong public policies underlying the work-product privilege; finding that it "provided the lawyer with an essential zone of privacy, where the lawyer could work 'free from unnecessary intrusion by opposing parties and their counsel'". *In re Grand Jury Proceedings,* 219 F.3d 175, 190 (2nd Cir. 2000) (citing *Hickman v. Taylor, 329 U.S. 495* (1947)). Core work product, consisting of attorney's notes, mental impressions, opinions, or legal theories, is viewed as "virtually sacrosanct" and "remains protected unless the party seeking disclosure makes a "highly persuasive showing of need." *McGrath v. Nassau County Health Care Corp.*, 204 F.R.D. 240, 243-244 (E.D.N.Y. 2001).

Defendant understands that privilege is not absolute and cannot simultaneously be used as both a shield and a sword. New York District Courts have held that an employer implicitly waives privilege when it puts the privileged information "at issue" in the case, by using the remedial measures an employer took following an investigation as a *Faragher-Ellerth* affirmative defense. *See McGrath v. Nassau County Health Care Corp.*, 204 F.R.D. 240, 244 (E.D.N.Y. 2001). However, the Court makes it clear in *McGrath* that an employer who invokes the *Faragher-Ellerth* defense does not automatically put any post-harassment investigation conducted at-issue. *McGrath,* 204 F.R.D. at 244. There is no *per se* rule on privilege waiver; the scope of the attorney-client privilege is determined on a case-by-case basis and cannot be implicitly waived unless the context of the waiver and the prejudice caused to the other party are considered. *Id.* at 243.

Here, there would be no prejudice to Plaintiff because unlike in *McGrath,* YouGov is not putting the entire investigation "at issue" to show that the remedial actions taken following the investigation was a remedy that Plaintiff did not avail herself to under the *Faragher-Ellerth* defense. When the defendant does not raise the adequacy of its investigation as a defense, but merely uses the investigation to rebut Plaintiff's false assertions, this Court has found that privilege is not used as a "sword" and is not implicitly waived. *See Robinson v. Time Warner, Inc,* 187 F.R.D. 144 (S.D.N.Y. 1999).

Given that Defendant has no plans on raising the adequacy of this investigation or the post-investigation remedial measures as a defense, and the unredacted investigation report has already been produced, withholding the privileged attorney's notes has no prejudice to the Plaintiff and privilege should not be waived.

We thank the Court for its attention to this matter.

Respectfully submitted,

Hon. Arun Subramanian
January 12, 2024
Page 7

VLADECK, RASKIN & CLARK, P.C.  SQUIRE PATTON BOGGS (US) LLP


 /s Anne L. Clark      */s/ Meghan E. Hill (with auth.)*
Anne L. Clark         Meghan E. Hill (MH1523)
Brandon R. White        Traci L. Martinez (admitted *pro hac vice*)
565 Fifth Avenue, 9th Floor    1211 Avenue of the Americas, 26th Floor
New York, New York 10017    New York, New York 10036
212-403-7332         Telephone:  +1.212 872.9800
              Facsimile:  +1.212 872 9815
*Attorneys for Plaintiff Tracy Schoenadel* E-mail:  meghan.hill@squirepb.com
               traci.martinez@squirepb.com

         *Counsel for Defendant, YouGov America, Inc.*


   From the parties' joint letter, as well as defendant's assertion of an affirmative defense that it acted in good faith, it appears that defendant plans to rely at trial on its internal investigation. The nature of that reliance is unclear from the letter. However, it is hard to imagine how the investigation would be raised in a way that would not be used, explicitly or implicitly, to put into the jurors' minds that the results of the investigation were favorable and vindicated the company's position. In fact, defendant admits that it intends to use at least some statements made to attorneys in the investigation--those by Mr. Horowitz--to support its position.

   If defendant agrees that it will not rely, in any way, shape or form, on the investigation, then it need not turn over the attorney notes at issue here. However, if it elects to rely on the investigation, including by referencing Mr. Horowitz's alleged lies, then that is its choice. The Court is not going to accept the company's invitation to try to thread the needle here, only to end up in a situation where mid-trial it becomes clear that the notes should have been turned over in discovery.

   That is not to say that the notes will be admissible at trial. And if defendant agrees not to raise its investigation, but then plaintiff opens the door at trial, for instance by asserting that plaintiff raised her grievances internally at the company but the company did not take those allegations seriously, then the company may rely on its investigation despite having not turned over the notes.

   Defendant should make its election and, if required, turn over the notes by January 26, 2024.


SO ORDERED.

Arun Subramanian, USDJ
Date: January 19, 2024