UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

TRACY SCHOENADEL,

Plaintiff,

- v –

YOUGOV AMERICA INC.,

Defendant.

--------------------------------------------------------x

Case No. 1:22-CV-10236-AS

Judge Arun Subramanian

**DEFENDANT YOUGOV AMERICA INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE***

Dated: February 4, 2025

Respectfully submitted,

*/s/ Meghan E. Hill*

Meghan E. Hill (MH1523)
Traci L. Martinez (*pro hac vice*)
SQUIRE PATTON BOGGS (US) LLP
1211 Avenue of the Americas, 26th Floor
New York, New York 10036
Telephone: +1.212 872.9800
Facsimile: +1.212 872 9815
E-mail: meghan.hill@squirepb.com
traci.martinez@squirepb.com

*COUNSEL FOR DEFENDANT YOUGOV AMERICA INC.*

**TABLE OF CONTENTS**

**Page**

I. **PRELIMINARY STATEMENT** ........ 1
II. **LEGAL STANDARD** ........ 2
III. **ARGUMENT** ........ 2
A. **Motion *in Limine* Number 1: All Evidence of Other Discrimination or Retaliation Allegations and Complaints Against YouGov.** ........ 2
B. **Motion *in Limine* Number 2: YouGov Emails Discussing Exit Settlement for Plaintiff and Inadvertent Offer Calculation.** ........ 10
C. **Motion *in Limine* Number 3: All Evidence Concerning Alleged Illegal Drug Use by Current/Former YouGov Leadership.** ........ 12
D. **Motion *in Limine* Number 4: All Evidence Concerning Mr. Saez's Detainment in Dubai.** ........ 14
E. **Motion *in Limine* Number 5: Evidence of Economic Damages: Plaintiff Is Neither Entitled to Front Pay nor Back Pay Damages.** ........ 15
F. **Motion *in Limine* Number 6: All Evidence on Plaintiff's Impermissibly Speculative Economic Damages.** ........ 17
G. **Motion *in Limine* Number 7: Plaintiff's Testimony of Her Own Opinion of Her Job Performance and Credentials.** ........ 20
H. **Motion *in Limine* Number 8: Opinion Testimony of Plaintiff's Co-Workers and Subordinates Regarding Her Job Performance.** ........ 22
I. **Motion *in Limine* Number 9: Plaintiff's Testimony as to Her Medical Diagnoses and as to Causation of Any Alleged Non-Economic Injuries.** ........ 23
J. **Motion *in Limine* Number 10: Premature Evidence of YouGov's Financial Condition as Disclosed in Discovery or in Public Records.** ........ 24
IV. **CONCLUSION** ........ 25
**CERTIFICATE OF SERVICE** ........ 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Technical Ceramics Corp. v. Presidio Components, Inc.*,
2019 WL 2330855 (E.D.N.Y 2019)....25

*In re Arotech Sec. Litig.*,
No. 07 Civ. 1838(RJD)(WP), 2010 WL 2301195 (E.D.N.Y. June 7, 2010)....11

*Barnes v. Anderson*,
202 F.3d 150 (2d Cir. 1999)....23

*Berkovich v. Hicks*,
922 F.2d 1018 (2d Cir.1991)....7

*Boger v. New York State Off. of Parks*,
No. 517CV289MADTWD, 2019 WL 6038545 (N.D.N.Y. Nov. 14, 2019)....10

*Brady v. Wal-Mart Stores, Inc.*,
No. CV 03-3843 (JO), 2005 WL 1521407 (E.D.N.Y. June 21, 2005)....16

*Brink v. Union Carbide Corp.*,
41 F.Supp.2d 402 (S.D.N.Y. 1997)....4

*Bryant v. Serebrenik*,
No. 15CV3762ARRCLP, 2017 WL 713897 (E.D.N.Y. Feb. 23, 2017)....10

*City of Cleveland v. Peter Kiewit Sons Co.*,
624 F.2d 749 (6th Cir. 1980)....25

*Design Strategy, Inc. v. Davis*,
469 F.3d 284 (2d Cir. 2006)....20

*Dister v. Continental Group, Inc.*,
859 F.2d 1108 (2d Cir. 1988)....21

*Dotson v. City of Syracuse*,
No. 511CV620BKSATB, 2019 WL 6337326 (N.D.N.Y. Nov. 27, 2019)....4

*Dryanski v. Sloan Valve Co.*,
No. 84–c–1396, 1986 WL 6951 (N.D. Ill. June 11, 1986)....22

*Gogol v. City of New York*,
No. 15 CIV. 5703 (ER), 2018 WL 4616047 (S.D.N.Y. Sept. 26, 2018)....8

*Greenbaum v. Svenska Handelsbanken*,
979 F. Supp. 973 (S.D.N.Y. 1997) ....................16

*Gulati v. Chao*,
No. 17-6271, 2019 WL 4597567 (D.N.J. Sept. 23, 2019) ....................23

*Hamza v. Saks Fifth Ave., Inc.*,
No. 07 CIV. 5974 FPS, 2011 WL 6187078 (S.D.N.Y. Dec. 5, 2011) ....................17

*Hart v. RCI Hosp. Holdings, Inc.*,
90 F. Supp. 3d 250 (S.D.N.Y. 2015) ....................11, 12

*Haskell v. Kaman Corp.*,
743 F.2d 113 (2d Cir. 1984) ....................4, 10

*Henry v. Wyeth Pharm., Inc.*,
616 F.3d 134 (2d Cir. 2010) ....................8

*Highland Capital Mgt., L.P. v. Schneider*,
551 F. Supp. 2d 173 (S.D.N.Y. 2008) ....................2

*in Limine*
Number 7: Plaintiff's Testimony of Her Own Opinion of Her Job Performance and Credentials .................... *passim*

*in Limine*
Number 8: Opinion Testimony of Plaintiff's Co-Workers and Subordinates Regarding Her Job Performance ....................22

*Jaros v. LodgeNet Ent. Corp.*,
171 F. Supp. 2d 992 (D.S.D. 2001), *aff'd*, 294 F.3d 960 (8th Cir. 2002) ....................18

*Karlo v. Pittsburgh Glass Works*,
LLC, No. 2:10-CV-1283, 2016 WL 69651 (W.D. Pa. Jan. 6, 2016) ....................8, 10

*McLeod v. Parsons Corp.*,
73 Fed. Appx. 846 (6th Cir. 2003) (unpublished) ....................8

*Merritt v. FirstEnergy Corp.*,
No. 1:05–cv–00586, 2008 WL 89603 (N.D. Ohio Jan. 7, 2008) ....................22

*Olsen v. Marshall & Ilsley Corp.*,
267 F.3d 597 (7th Cir.2001) ....................21

*Palmieri v. Defaria*,
88 F.3d 136 (2d Cir. 1996) ....................2

*Park W. Radiology v. CareCore Nat. LLC*,
675 F.Supp.2d 314 (S.D.N.Y. 2009)....................9

*Pasternak v. Dow Kim*,
961 F. Supp. 2d 593 (S.D.N.Y. 2013)....................18

*Playboy Enters., Inc. v. Chuckleberry Pub., Inc.*,
486 F.Supp. 414 (S.D.N.Y.1980), aff'd, 687 F.2d 563 (2d Cir.1982)....................11

*Reed v. A.W. Lawrence & Co.*,
95 F.3d 1170 (2d Cir. 1996)....................15

*Ricketts v. City of Hartford*,
74 F.3d 1397 (2d Cir. 1996)....................6

*Rivera v. Baccarat*,
34 F. Supp. 2d 870 (S.D.N.Y. 1999)....................16, 20

*Rosen v. Columbia Univ.*,
1995 WL 464991 (S.D.N.Y Aug. 7, 1995)....................21

*Sagendorf-Teal v. County of Rensselaer*,
100 F.3d 270 (2d Cir. 1996)....................17

*Sanderson v. Leg Apparel LLC*,
No. 1:19-CV-8423-GHW, 2024 WL 898654 (S.D.N.Y. Mar. 1, 2024)....................17

*Schonfeld v. Hilliard*,
218 F.3d 164 (2d Cir. 2000)....................17, 18

*Singh v. Knuckles, Komosinski & Manfro, LLP*,
No. 18-CV-3213 (NSR), 2022 WL 862251 (S.D.N.Y. Mar. 23, 2022)....................23

*Smith v. Flax*,
618 F.2d 1062 (4th Cir. 1980)....................21

*Sprint/United Management Co. v. Mendelsohn*,
552 U.S. 379 (2008)....................4

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
538 U.S. 408 (2003)....................24

*U.S. v. Levin*,
No. 15 CR. 101 (KBF), 2016 WL 8711458 (S.D.N.Y. Jan. 8, 2016)....................13, 15

*United States v. Cameron*,
814 F.2d 403 (7th Cir.1987)....................13, 14

*United States v. Wilson*,
303 Fed.App'x. 350 (7th Cir. 2008) .....6

*Vogelfang v. Riverhead Cnty. Jail*,
No. 04-CV-1727 SJF AKT, 2012 WL 1450560 (E.D.N.Y. Apr. 19, 2012) .....24

*Wallace v. Hano*,
1992 WL 230139 (S.D.N.Y.1992) .....7

*Woolfolk v. Baldofsky*,
No. 19CV3815WFKST, 2022 WL 2600132 (E.D.N.Y. July 8, 2022) .....24

**Statutes**

ADEA .....4

Civil Rights Act of 1964 Title VII, 42 U.S.C. § 2000e, *et seq.* .....1

New York City Human Rights Law .....1

New York Labor Law § 190 *et seq.* .....1

State Human Rights Law, N.Y .....1

**Other Authorities**

Fed. R. Evid. 401, 402 .....7

Fed. R. Evid. 602 .....22

Fed. R. Evid. 801(c) .....14

Fed. R. Evid. 802 .....14

Federal Rule of Civil Procedure 44.1 .....9

Federal Rule of Evidence 404, and (3) .....3

Federal Rule of Evidence 404(b)(1) .....7

Federal Rule of Evidence 408 .....11

Federal Rule of Evidence 701 .....23

Federal Rules of Evidence Rule 402 .....2, 11, 20, 24

Rule 401 .....2, 20, 21, 24

Rule 403 ..... *passim*

Rule 404(b) ....................7

Rule 702 ....................23

Rules 402 and 602 ....................23

Statement of Facts, ¶ 140 ....................3

Statement of Facts, ¶¶ 598-601 ....................23

## I. PRELIMINARY STATEMENT

This memorandum of law is respectfully submitted in support of Defendant YouGov America Inc.'s ("YouGov") motion *in limine* seeking to preclude at trial reference to certain evidence and arguments of Plaintiff, Tracy Schoenadel, in this action in which Plaintiff alleges discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Executive Law § 296 *et seq.* (the "NYSHRL") and the New York City Human Rights Law, Administrative Code of the City of New York § 8-107 *et seq.* (the "NYCHRL"), in addition to unlawful deduction of wages under New York Labor Law § 190 *et seq.* ("NYLL").

YouGov respectfully seeks an order excluding or precluding the following: (1) evidence of other discrimination or retaliation allegations against YouGov or its affiliates; (2) YouGov documents discussing an exit settlement for Plaintiff; (3) evidence concerning alleged illegal drug use by current/former YouGov leadership; (4) evidence of Mr. Saez' detainment in Dubai; (5) evidence of Plaintiff's claim to front and back pay awards; (6) evidence on Plaintiff's impermissibly speculative economic damages; (7) Plaintiff's own opinion testimony regarding her job performance and credentials; (8) Plaintiff's co-workers' opinion testimony on her job performance; (9) Plaintiff's own testimony as to her medical diagnoses and the causation of any alleged non-economic injuries; and (10) premature evidence of YouGov's financial condition.[1]

[1] On February 3, 2025, the parties met and conferred regarding their respective motions *in limine*. As a result of this meeting, Plaintiff's counsel informed YouGov that Plaintiff would not seek to introduce any evidence, testimony or argument on (1) an alleged affair and (2) Mr. Shakespeare and Mr. Chahal's compensation. Plaintiff's counsel further represented that Plaintiff would neither elicit opinion testimony on ultimate issues of law nor raise any golden rule arguments at trial.

## II. LEGAL STANDARD

District courts possess the "inherent authority to manage the course of its trials," which includes that right to rule on motions *in limine*. *Highland Capital Mgt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984)). Accordingly, motions *in limine* serve "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (citation omitted).

Pursuant to Rule 402 of the Federal Rules of Evidence, "[i]relevant evidence is not admissible." Fed. R. Evid. 402. Rule 401, in turn, establishes the familiar two-part test for relevance: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Rule 403, however, provides that even relevant evidence that may otherwise be admissible is properly excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. As further explained below, the Court should exclude certain evidence and arguments Plaintiff may attempt to rely on at trial because they are irrelevant, unfairly prejudicial, prone to mislead the jury, or a combination thereof.

## III. ARGUMENT

### A. Motion *in Limine* Number 1: All Evidence of Other Discrimination or Retaliation Allegations and Complaints Against YouGov.

Consistent with Plaintiff's representations in the Proposed Joint Pretrial Statement and her filings in response to YouGov's Motion for Summary Judgment, YouGov anticipates that Plaintiff

1103411875\2\AMERICAS

will seek to introduce "me too" evidence from multiple former YouGov or YouGov-affiliated employees regarding unrelated and unproven allegations and complaints of past instances of gender discrimination or retaliation by YouGov or its affiliates (who are not a parties to this litigation). [(*See, e.g.*, Proposed Joint Pretrial Statement; Pl.'s Opp'n to YouGov's Mot. Summ. J., at 16 (referencing former Senior Client Services Manager Jillian Rowen's "complaints of discrimination"), 19 (asserting that former Chief Client Officer – EU and UK, Ida Mykland, made a discrimination complaint against YouGov's affiliates) (PX-118; Dkt. 97, 109); Pl.'s Resp. to YouGov's Statement of Facts, ¶ 140 (unsupported allegations that Bianca Bruhn, Kirsty Wilson, Christina Cudworth, and Amelia Brophy filed complaints against YouGov's affiliates) (PX-154; Dkt. 99, 107); Pl.'s Resp. to SUF, ¶ 512 (stating that former Sales Director Michele Luthin noted a lack of women in senior roles during her exit interview), ¶¶ 514-15 (noting former Director of Sales Support Danielle Dupree's discrimination complaint filed with the Equal Employment Opportunity Commission) (PX-145; Dkt. 99, 108)).]

YouGov therefore moves for an order excluding all testimony, argument, evidence, or reference to any allegations and complaints of discrimination and/or retaliation against YouGov or its affiliates raised by any former YouGov or YouGov-affiliated employee other than Plaintiff, as such evidence is: (1) irrelevant, (2) improper propensity evidence under Federal Rule of Evidence 404, and (3) unfairly prejudicial. Each basis is discussed in turn.

**1. Evidence of other discrimination or retaliation complaints is irrelevant**

The fundamental questions to be resolved at trial are (1) whether YouGov discriminated against Plaintiff in the terms and conditions of her employment based on her gender, and (2) whether YouGov retaliated against Plaintiff in response to her filing a complaint or internal grievance alleging discrimination. Evidence relating to *unproven* claims of discrimination or

retaliation by *other* YouGov employees, however, does not "tend to prove or disprove" any material fact bearing on these fundamental questions. This is so for a host of reasons: these unsubstantiated allegations involve employees in varying roles across different departments and companies, subject to different reporting structures and stemming from disparate conduct.

Due to the irrelevancy of "me too" evidence (as well as its highly prejudicial nature), courts routinely exclude this evidence or place strict limits on its proffer. *See Haskell v. Kaman Corp.*, 743 F.2d 113, 122 (2d Cir. 1984) (reversing district court and ordering new trial in ADEA action where district court permitted testimony of six former officers as to the circumstances of their termination, noting such testimony "was not relevant to the question of whether [plaintiff] was terminated for age-related reasons"); *Brink v. Union Carbide Corp.*, 41 F.Supp.2d 402, 404 (S.D.N.Y. 1997) (testimony of third party in separate department with separate supervisor not relevant). Indeed, whether alleged evidence of discrimination or retaliation experienced by other employees is admissible is "fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and the theory of the case." *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008); *see also Dotson v. City of Syracuse*, No. 511CV620BKSATB, 2019 WL 6337326, at *4 (N.D.N.Y. Nov. 27, 2019) (identifying additional factors governing the admissibility of "me too" evidence, including "[w]hether the same 'bad actors' were involved in the 'other' conduct and in the challenged conduct" and "[w]hether the affected employees and the plaintiff were similarly situated") (quoting *Schneider v. Regency Heights of Windham, LLC*, No. 14 Civ. 217, 2016 WL 7256675, at *12 (D. Conn. Dec. 15, 2016)).

The following chart illustrates the dissimilarities between Plaintiff's employment and those of the anticipated former employees, with material differences noted in red:

| Employee | Employer | Location | Title(s) | Supervisor(s) | Allegations Substantiated | Allegations Identified in Complaint, Pilot Program Disclosures, or Interrogatories |
|---|---|---|---|---|---|---|
| Plaintiff | YouGov America, Inc. | NY, USA | Vice President & Managing Dir. of Sports NA; Global Head of New Business Sales; Chief Customer Officer | Frank Saez; Sundip Chahal | N/A | N/A |
| Sara Eddleston | YouGov Plc | UK | Consumer Insight Lead | Frank Saez | No | No |
| Amelia Brophy | YouGov Plc | UK | General Manager | Sundip Chahal | No | No |
| Bianca Bruhn | YouGov Denmark A/S | Denmark | Regional CEO – EU and UK | Sundip Chahal | No | No |
| Michele Luthin | YouGov America Inc. | NY, USA | Sales Director | Christopher Todd<br><br>(Christopher Todd *reported* to Plaintiff) | No | No |
| Ida Mykland | YouGov Denmark A/S | Denmark | Chief Client Officer - EU and UK | Bianca Bruhn | No | No |
| Kirsty Wilson | YouGov Plc | UK | Group HR Director | Stephan Shakespeare | No | No |
| Jillian Rowen | YouGov America Inc. | NY, USA | Senior Client Services Manager | Sam Luks | No | Yes |
| Samantha Luks | YouGov America Inc. | CA, USA | Managing Director - Scientific Research | Ray Martin | No | No |
| Danelle Dupree | YouGov America Inc. | NY, USA | Senior Sales Manager | Larry Shannon-Missal | No | Yes |

Next, YouGov directs the Court's attention to Ms. Rowen, whose self-serving internal grievance exemplifies the irrelevance of this category of evidence. As an initial matter, the impetus

for Ms. Rowen's grievance—a denied promotion to Research Director in a department outside of Plaintiff's departments and at a lower level than Plaintiff—scarcely overlaps with Plaintiff's experience at YouGov, where Plaintiff continuously received compensation increases, promotions, and discretionary bonuses prior to her voluntary resignation. [(DX-1, JX-12; YouGov's SUF ¶¶ 43, 200 (Dkt. 67); YouGov's Reply to Pl.'s SUF, ¶ 492 (Dkt. 124, 125)).] In a similar vein, the relevant facts underlying Ms. Rowan's grievance are unique to her—and not Plaintiff. For example, despite claiming she was entitled to a promotion, *her own manager* stated otherwise. [(Chahal Dep., 119:12-15 (Dkt. 75).] And YouGov's CEO – Americas shared a similar sentiment, testifying in his deposition that Ms. Rowen was "doing less than half the output of other people at [her] level." [(Martin Dep., 248:3-12, 249:12-16 (Dkt. 75).] Simply put, Ms. Rowen's qualifications (or lack thereof) and YouGov's unwillingness to hand out a promotion to a below-average performer shed no light on the validity of *Plaintiff's* claims.

Finally—and critically—Ms. Rowen's allegations surrounding her grievance were held to be *unsubstantiated*. [(YouGov's Reply to Pl.'s Add'l SUF, ¶ 503 (Dkt. 124, 125).] This lack of corroboration weighs heavily against the admission of this evidence. *See Ricketts v. City of Hartford*, 74 F.3d 1397, 1415 (2d Cir. 1996) (noting that the relevance of a prior unsubstantiated complaint is "obviously limited"); *United States v. Wilson*, 303 Fed.App'x. 350, 355 (7th Cir. 2008) (holding that accusations of unsubstantiated misconduct "offered little indicia of reliability" and were of "limited probative value").

The relevancy shortfalls of Ms. Rowen's grievance similarly plague the unproven discrimination or retaliation complaints of other former employees—many of whom were not employed by YouGov, were subject to different reporting structures, were located outside of the

U.S., and/or raised dissimilar complaints than those raised by Plaintiff—and therefore the Court should preclude such evidence at trial. Fed. R. Evid. 401, 402.

**2. Evidence of other discrimination or retaliation complaints is improper character evidence.**

Even if the Court were to conclude that evidence of other discrimination or retaliation allegations is relevant (which it is not), the Court should nonetheless exclude this evidence as improper character evidence.

Federal Rule of Evidence 404(b)(1) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed.R.Evid. 404(b)(1). That is to say, Plaintiff cannot offer evidence of unrelated alleged conduct by YouGov or its affiliates to prove that it engaged in purportedly similar conduct toward Plaintiff—but that is *exactly* what Plaintiff intends to do. Indeed, YouGov expects that Plaintiff will rely on other alleged complaints of discrimination or retaliation to show that YouGov has a propensity to discriminate or retaliate, thereby raising the inference that YouGov discriminated or retaliated against Plaintiff in this particular case. This, however, is the quintessential inference that Rule 404(b) prohibits. *See Berkovich v. Hicks*, 922 F.2d 1018, 1022 (2d Cir.1991) (proffer that prior complaints showed defendant's "malicious" state of mind "amounts to no more than a veiled attempt to do what Rule 404(b) expressly prohibits—introducing evidence of bad acts to show the defendant's propensity to commit such acts"); *Wallace v. Hano*, 1992 WL 230139, *7 (S.D.N.Y.1992) (excluding evidence of prior complaints lodged against defendant where plaintiff offered such evidence to show a pattern of misconduct by the defendant). Accordingly, the Court should exclude evidence of other discrimination or retaliation allegations by former YouGov employees pursuant to Rule 404(b).

**3. Evidence of other discrimination or retaliation complaints is likely to cause unfair prejudice, waste time, prolong trial, and confuse the issues.**

Additionally, the Court should exclude evidence of other complaints of alleged discrimination or retaliation under Rule 403 because such evidence is likely to cause unfair prejudice, waste time, prolong the trial, and confuse the issues.

***Unfair Prejudice***. Unfair prejudice arises where evidence "might dispose a jury to render a verdict for reasons unrelated to the merits of the case." *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 150 (2d Cir. 2010) (citing *Leopold v. Baccarat, Inc.*, 174 F.3d 261, 270 (2d Cir. 1999)). Evidence of other unproven discrimination or retaliation complaints may cause jurors to conclude that "where there's smoke, there's fire"—that is, they might believe YouGov discriminated or retaliated against Plaintiff simply because other people have raised discrimination and retaliation complaints against YouGov. This evidence invites the jury to base its decision on matters unrelated to the merits of this case and lures the jury into accepting Plaintiff's version of the events based on an *assumption* that the "me too" evidence is true, thereby unfairly prejudicing YouGov. *See Gogol v. City of New York*, No. 15 CIV. 5703 (ER), 2018 WL 4616047, at *3 (S.D.N.Y. Sept. 26, 2018) (excluding unsubstantiated complaints against defendant, noting that "such evidence's probative value is substantially outweighed by the danger of unfair prejudice"); *McLeod v. Parsons Corp.*, 73 Fed. Appx. 846, 854 (6th Cir. 2003) (unpublished) (affirming district court's exclusion of evidence of other employment discrimination lawsuits filed against the defendant as unfairly prejudicial).

***Wasting Time and Prolonging Trial***. The admission of other complaints of discrimination or retaliation against YouGov, which would necessarily require rebuttal evidence by YouGov, would turn this case into a series of "mini-trials," resulting in "a substantial waste of the jury's time and confusion of the issues." *Karlo v. Pittsburgh Glass Works*, LLC, No. 2:10-CV-1283,

2016 WL 69651, at *7 (W.D. Pa. Jan. 6, 2016) (barring testimony and evidence of other discrimination complaints against the defendant filed by former employees); *see also Park W. Radiology v. CareCore Nat. LLC*, 675 F.Supp.2d 314, 325 (S.D.N.Y. 2009) (excluding evidence when it risked "sideshow of mini-trials on collateral issues pertaining to the conduct and relationships of third parties that may have only tangential bearing, if at all, to the issues and claims disputed in this case").

Here, should the Court permit Plaintiff to introduce evidence of other complaints of discrimination or retaliation by former YouGov employees, YouGov will be forced to introduce counter-evidence to establish the baselessness of such complaints. No longer will this case simply be between Plaintiff and YouGov; instead, this action will devolve into a series of "mini-trials" on the merits of multiple unsubstantiated complaints—all involving individuals who are *not* the plaintiff in this case and many of whom were *never* employed by YouGov. Moreover, most of these "mini-trials" would involve *non*-U.S. former employees who were not subject to U.S. employment laws, necessitating presentation of foreign employment law.[2] This will likely add days to this trial, unnecessarily prolonging its length in violation of Rule 403.[3]

***Confusion of the Issues***. Admitting evidence on unsubstantiated complaints of discrimination or retaliation *not* involving Plaintiff falls well outside the scope of Plaintiff's claims

---

[2] Plaintiff never gave notice of the applicability of foreign law as required by Federal Rule of Civil Procedure 44.1. Fed. R. Civ. P. 44.1 ("A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing.").

[3] In addition to unnecessary delay, YouGov would also be unfairly prejudiced by having to rebut the claims of at least seven women whom Plaintiff failed to identify in her Second Amended Complaint, her Pilot Discovery Protocol Disclosures, and in all of her discovery responses. [(*See* 2d Am. Compl. (DX-99); Pl.'s Pilot Protocol Disclosures; Plaintiff's Discovery Responses (DX-100, DX-100A).)] By omitting the identity of these individuals, Plaintiff foreclosed YouGov's ability to take adequate discovery on their discrimination/retaliation complaints, leaving YouGov scrambling to defend itself from Plaintiff's ever-evolving claims.

and is likely to confuse the issues and mislead the jury. *See Boger v. New York State Off. of Parks*, No. 517CV289MADTWD, 2019 WL 6038545, at *5 (N.D.N.Y. Nov. 14, 2019) (excluding allegations of discrimination unrelated to the plaintiff's claims made by defendant's former employees, finding "the minimal probative value of the proposed testimony is substantially outweighed by a danger of confusing the issues or misleading the jury"); *Bryant v. Serebrenik*, No. 15CV3762ARRCLP, 2017 WL 713897, at *3 (E.D.N.Y. Feb. 23, 2017) (finding "[t]he time and potential confusion wrought by admitting evidence required to contextualize [the unrelated complaint] would overwhelm its probative value").

Additionally, Plaintiff's proposed "me too" evidence is likely to mislead the jury because it assumes the sample size is statistically significant, leading to an unwarranted—and improper--inference of correlation. *See Haskell*, 743 F.2d at 121 (citing approvingly to *Turner v. Texas Instruments Inc.*, 555 F.2d 1251, 1257 (5th Cir.1977), which held that sample of eight adverse employment actions over a two-year period were "far too small even to be statistically significant, much less sufficiently clear to have probative significance"). For these reasons, courts frequently exclude evidence of other complaints, *see Karlo*, 2016 WL 69651, at *7, and the Court should do the same here.

YouGov will appear at trial prepared to try the case of Tracy Schoenadel. YouGov should not be required to spend days—if not weeks—trying other cases simultaneously. Accordingly, all testimony, argument, evidence, or reference to any complaints of discrimination and/or retaliation against YouGov raised by any former YouGov (or YouGov-affiliated) employee other than Plaintiff should be excluded.

### B. Motion *in Limine* Number 2: YouGov Emails Discussing Exit Settlement for Plaintiff and Inadvertent Offer Calculation.

YouGov expects Plaintiff to offer certain YouGov documents showing YouGov's interest in negotiating an exit settlement following Plaintiff's filing of her internal Grievance. [(*See* Pl.'s Resp. to YouGov's SUF, ¶ 518 (citing Clark Decl. Exs. 119, 184) (Dkt. 99, 108); Pl.'s Opp'n to YouGov's Mot. Summ. J., at 28-29 (relying on settlement emails as proof of YouGov's "hostility to [Plaintiff's] protected activity") (Dkt. 97, 109); Clark Decl. Ex. 195 (exit settlement calculation inadvertently sent to Plaintiff) (Dkt. 90-195)).] However, these emails, one of which contains a calculation for Plaintiff's exit settlement, are both irrelevant under Rule 402 and run afoul of Rule 403.

As an initial matter, these documents—much like a settlement offer excludable under Federal Rule of Evidence 408—are of "only limited probative value." *See Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 286 (S.D.N.Y. 2015). As recognized in *Hart*, "the fact of such an offer," or as here, YouGov's past interest in negotiating an exit settlement with Plaintiff, "is a far cry" from an admission of liability. *See id.* Indeed, exit settlements are routinely made where the employee's position lacks merit, "but where settlement nonetheless makes sense as a business matter." *See id.*; *see also In re Arotech Sec. Litig.*, No. 07 Civ. 1838(RJD)(WP), 2010 WL 2301195, at *6 (E.D.N.Y. June 7, 2010) ("[A]s the parties made quite clear at the Fairness Hearing, the settlement was entirely a business decision, both sides having determined that the cost of pursuing the dispute to final judgment outweighed any compromise in their position reflected in the settlement figure."); *Playboy Enters., Inc. v. Chuckleberry Pub., Inc.*, 486 F.Supp. 414, 423 n. 10 (S.D.N.Y.1980) ("[T]hat plaintiff settled with PLAYGIRL does not in fact establish what a court would have decided had the parties proceeded to trial. A host of factors may affect a litigant's decision to settle."), aff'd, 687 F.2d 563, 564 (2d Cir.1982). Thus, YouGov's discussions and efforts surrounding an exit settlement with Plaintiff hardly help the jury assess the validity of

Plaintiff's claims. To the contrary, they simply reflect YouGov's awareness of the business risk that Plaintiff's past employment presents.

Not only are these documents irrelevant to this action, but their admission would also likely mislead the jury, substantially prejudice YouGov, and unnecessarily prolong this trial. *See id.* at 287. It is highly likely that the jury would treat the contents of these documents as an admission of liability, though they are not – especially when viewed in context. Because of this likely risk, YouGov would be required to put forth evidence and argument regarding its rationale behind these documents, including an explanation of the economics of litigation, in order to explain to the jury why these documents do not evidence liability. Such evidence and testimony "have enormous capacity to introduce unfair prejudice—primarily to defendants, but also potentially to plaintiffs—and also delay." *Id.* (noting also that the introduction of settlement evidence "would create a large and unacceptable risk of inviting a 'trial within a trial'").

Accordingly, to obviate the substantial risk of prejudice, confusion, and delay presented by these documents—documents that do little to address the disputed issues in this case—the Court should preclude their introduction and any testimony or reference to YouGov's willingness and efforts to negotiate an exit settlement for Plaintiff.

### C. Motion *in Limine* Number 3: All Evidence Concerning Alleged Illegal Drug Use by Current/Former YouGov Leadership.

Plaintiff has suggested that she intends to offer evidence that certain current/former members of YouGov leadership engaged in the use of illegal drugs. [(*See* Pl.'s Add'l SUF, ¶¶ 528-31 (accusing Mr. Saez of using cocaine while employed at YouGov), 532-34 (accusing Mr. Martin of offering cocaine to other YouGov employees), 536 (speculating that Mr. Martin and Mr. McIntosh used drugs together), 538 (alleging that Mr. McIntosh asked Ms. Bruhn to find him

cocaine) (Dkt. 99, 108); Pl.'s Opp'n to YouGov's Mot. Summ. J., at 21 (referencing same) (Dkt. 97, 109).]

Setting aside the falsity of such allegations, YouGov moves for an order excluding any testimony, argument, evidence, or reference to this alleged drug use as it is irrelevant and highly prejudicial. *See U.S. v. Levin*, No. 15 CR. 101 (KBF), 2016 WL 8711458, at *12 (S.D.N.Y. Jan. 8, 2016) (disallowing evidence of other employees' drug use "because it has minimal probative value that is substantially outweighed by the risk of unfair prejudice"). Plaintiff will likely offer this evidence to show that "senior men violated [YouGov's drug policy] with impunity[.]" [(Pl.'s Opp'n to YouGov's Mot. Summ. J., at 21 (Dkt. 97, 109)).] Even if true, which it is not, such a showing fails to make any fact of consequence in this matter more or less probable. Indeed, absent evidence that YouGov treated Plaintiff or a similarly situated employee's illegal drug use differently than its alleged treatment of drug use by male leadership, then the alleged drug use is irrelevant to the issue of whether YouGov discriminated or retaliated against Plaintiff. To this point, Plaintiff was *never* disciplined by YouGov for engaging in similar off-duty conduct. And to the extent she disagrees, any alleged "discipline" was directly tied to Plaintiff's failure to meet her budget and her execution of contracts without legal review, resulting in YouGov incurring hundreds of thousands of dollars in losses. YouGov's alleged permissiveness surrounding wholly dissimilar off-duty conduct simply has no relevance to Plaintiff's theories of liability.

But even if such alleged drug use is relevant, its relevancy is substantially outweighed by the danger that such evidence would unfairly prejudice the jury against YouGov. *See Levin*, 2016 WL 8711458 at *12; *see also United States v. Cameron*, 814 F.2d 403, 405 (7th Cir.1987) ("[T]here is considerable danger that evidence that a witness has used illegal drugs may so prejudice the jury that it will excessively discount the witness' testimony."). Here, there is

"considerable danger" that Plaintiff's unfounded allegations concerning drug use by certain current/former members of YouGov leadership will invite the jury to incorrectly conclude that because YouGov leadership—and therefore YouGov itself—tolerates illegal conduct in one context (*i.e.*, illegal drug use by leadership), it also must tolerate illegal conduct in another context (*i.e.*, unlawful discrimination and retaliation). And because of the legitimate risk that the jury will "excessively discount" YouGov's defense following the admission of this unsubstantiated evidence, *see Cameron*, 814 F.2d at 405, the likelihood that the jury will render a verdict on grounds unrelated to the merits of this case escalates, thereby rendering the admission of this evidence unduly prejudicial under Rule 403. Accordingly, the Court should exclude all evidence, testimony, or reference concerning alleged illegal drug use by current/former YouGov leadership.[4]

### D. Motion *in Limine* Number 4: All Evidence Concerning Mr. Saez's Detainment in Dubai.

YouGov anticipates that Plaintiff will attempt to attack Mr. Saez's character by introducing evidence of his detainment in Dubai. [(*See* Pl. Decl. ¶¶ 194-196 (Dkt. 94, 103) (asserting that Mr. Saez's detainment in Dubai stemmed from an attempt to purchase illegal drugs from an undercover police officer)).] For many of the same reasons noted in the immediately preceding section, any evidence, testimony, or reference to Mr. Saez's detainment in Dubai should be excluded because

[4] YouGov separately notes that much—if not all—of this evidence constitutes inadmissible hearsay, thereby providing the Court with an additional basis for exclusion. [(*See, e.g.,* Pl.'s Add'l SUF, ¶¶ 532 ("Sarac *told* Martin that she had grabbed the baggies of cocaine out of his desk before the movers got to it, and that he was lucky she did so.") (emphasis added), 536 ("Martin *told* Horowitz several times about him 'partying' with McIntosh when they were both in London and when McIntosh was in the US (Horowitz Decl. ¶ 11) From the context, Horowitz understood Martin to be talking about doing drugs with McIntosh") (emphasis added), 538 ("Bruhn . . . *told* Horowitz that when McIntosh visited Bruhn in Denmark, he asked her to find him cocaine, saying all the other country leads did this for him.") (emphasis added) (Dkt. 124, 125)).] The only purpose of this testimony is to prove the truth of the matter asserted, *i.e.*, to prove that YouGov leadership used illegal drugs. As such, it is inadmissible. *See* Fed. R. Evid. 801(c); Fed. R. Evid. 802.

it is irrelevant and substantially prejudicial. *See Levin*, 2016 WL 8711458 at *12 (precluding evidence of other employees' drug use "because it has minimal probative value that is substantially outweighed by the risk of unfair prejudice").

Additionally, admission of this evidence runs the considerable risk of confusing the issues, misleading the jury, and unduly delaying resolution of this case. To illustrate, in order for YouGov to properly rebut this evidence, it will be forced to put on evidence addressing Dubai's legal system, particularly its criminal procedure, to establish that Mr. Saez was neither "arrested" nor "convicted" by the U.S. legal system's standards. This proffer would inevitably lead to a "mini-trial" on the unsubstantiated conduct of a non-party and non-witness, governed by United Arab Emirates' law.

For the above reasons, the Court should exclude all evidence, testimony, or reference concerning Mr. Saez's detainment in Dubai.

### E.     Motion *in Limine* Number 5: Evidence of Economic Damages: Plaintiff Is Neither Entitled to Front Pay nor Back Pay Damages.

First, the Court should exclude all evidence related to Plaintiff's claim for front pay because she accepted comparable employment with Playfly prior to resigning from YouGov. [(*See* YouGov's SUF, ¶¶ 395-96 (Dkt. 67) (indicating that Plaintiff signed her offer letter accepting employment with Playfly on March 8, 2022 – a week before she voluntarily resigned on March 16, 2022); *see also* Pl.'s Damages Model, (PX-206) (estimating lost compensation for 2025 and 2026 at $365,653)).] Second Circuit precedent provides that front pay is recommended only when a plaintiff has been unable to find another job and "the factfinder can reasonably predict that the plaintiff has no reasonable prospect of obtaining comparable alternative employment." *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1182 (2d Cir. 1996).

Here, prior to her voluntary resignation, Plaintiff accepted comparable employment when she became Playfly's Head of Operations. [(YouGov's SUF, ¶¶ 392-96 (Dkt. 67); (DX-17)).] Playfly, like YouGov's Sports department, conducts marketing research for "sports organizations, teams, leagues, distribution partners and brands." [(YouGov's SUF, ¶¶ 360, 384-89 (Dkt. 67)).] The Head of Operations role promised Plaintiff an annual salary of $325,000 and allowed her to participate in Playfly's commission plan. [(JX-44).] In comparison, when Plaintiff resigned from YouGov, her annual salary was [REDACTED]—approximately $40,000 *less* than the offered salary at her new position with Playfly. In fact, a review of Plaintiff's W-2 Wage & Tax Statements from Playfly indicate that she earned significantly *more* than her highest annual salary at YouGov: For calendar year 2023, Plaintiff earned [REDACTED] in compensation; and for calendar year 2024, Plaintiff earned [REDACTED] in compensation. [(PX-203; JX-50.)]

In light of the above, Plaintiff is not entitled to front pay—even if, as Plaintiff suggests, she is ultimately earning less at Plafly. *See Rivera v. Baccarat*, 34 F. Supp. 2d 870, 878 (S.D.N.Y. 1999) (finding it "inequitable" to award plaintiff front pay where plaintiff worked for another employer "for two years for significantly lower wages and benefits than she received at [defendant], yet she has presented no evidence that she has made any further efforts to secure more comparable employment"); *Greenbaum v. Svenska Handelsbanken*, 979 F. Supp. 973, 988, n. 5 (S.D.N.Y. 1997) (denying front pay where plaintiff accepted a position "in the same field, doing extremely similar work at a similar title," notwithstanding the fact that her salary with her new employer was lower than it was with defendant); *Brady v. Wal-Mart Stores, Inc.*, No. CV 03-3843 (JO), 2005 WL 1521407, at *7 (E.D.N.Y. June 21, 2005) (denying front pay where plaintiff obtained alternate employment at a lesser rate of pay).

And second, the Court should also exclude all evidence related to Plaintiff's claim for back pay. "[A]n employee is entitled to back pay damages beginning on the date of her wrongful termination, and continuing until the date that she obtains employment at which she earns the same or more money than earned at her previous job." *Hamza v. Saks Fifth Ave., Inc.*, No. 07 CIV. 5974 FPS, 2011 WL 6187078, at *4 (S.D.N.Y. Dec. 5, 2011) (citing *Taddeo v. Ruggiero Farenga, Inc.*, 102 F.Supp.2d 197, 198-99 (S.D.N.Y.2000); *Clark v. Frank*, 960 F.2d 1146, 1151 (2d Cir.1992)). Here, because Plaintiff secured a higher-paying position at Playfly *prior* to her *voluntary resignation* at YouGov (*i.e.*, *before* "the date of her wrongful termination"), she is not entitled to back pay. *See id.*

For the reasons stated above, the Court should exclude all testimony, argument, evidence, or reference to Plaintiff's claims for front pay and back pay.

### F. Motion *in Limine* Number 6: All Evidence on Plaintiff's Impermissibly Speculative Economic Damages.

Even if the Court determines that Plaintiff's resignation from YouGov for a higher-paying position at Playfly does not foreclose front pay and back pay damages, the Court should nevertheless preclude Plaintiff from introducing evidence on her economic damages, as her computations rely on impermissible and misleading speculation. *See Schonfeld v. Hilliard*, 218 F.3d 164, 172 (2d Cir. 2000) (stating that awards of damages must be "capable of measurement based upon known reliable factors without undue speculation"); *Sagendorf-Teal v. County of Rensselaer*, 100 F.3d 270, 277 (2d Cir. 1996) (upholding district court's denial of front pay "on the ground that the proposed methods for calculating the award were too speculative."); *Sanderson v. Leg Apparel LLC*, No. 1:19-CV-8423-GHW, 2024 WL 898654, at *5 (S.D.N.Y. Mar. 1, 2024) ("A plaintiff seeking front pay has the same burden to prove a non-speculative basis on which to calculate damages as a plaintiff seeking back pay.")

As reflected in her Damages Model, Plaintiff's lost or denied compensation totaling $2,092,084 is a figure derived from a potpourri of speculation:

| **Lost or Denied Compensation Components** | **Issues with Plaintiff's Computation** |
|---|---|
| The difference between her salary and the salary of YouGov's CEO – Americas. | Plaintiff has provided no evidence outside of her self-service opinion that she was qualified for the CEO – Americas role. She was not. Plaintiff was unqualified for the position given her lack of experience and tenure across YouGov's different business products and departments. [(SUF ¶ 171 (Dkt. 67).)] |
| Plaintiff's unpaid FY-2021 Sports bonus ($93,300.54) and projected Sports bonuses for years 2022 through 2026 ($100,000 per year). | Plaintiff had no contractual right to this Sports bonus. Sports bonuses were discretionary, not contractual, and allocated based on the bonus pool money available following the close of the fiscal year. [(SUF ¶ 204 (Dkt. 67).] As such, her claim to an annual Sports bonus is unduly speculative. *See Pasternak v. Dow Kim*, 961 F. Supp. 2d 593, 597 (S.D.N.Y. 2013) (precluding testimony of a plaintiff's lost income that consisted of lost bonus as impermissibly speculative where bonus was discretionary). Further, as of 2022, *the Sports bonus no longer existed*. |
| $200,000 in unpaid commissions for 2021 and projected commissions of $200,000 per year for 2022 through 2026. | Plaintiff has provided no evidence beyond her mere speculation that she is entitled to $200,000 in unpaid commissions. At all times during her employment, YouGov fully complied with its obligations to pay Plaintiff commissions. Moreover, Plaintiff can only speculate that she, despite a history of poor performance and expressed desire to leave YouGov, would have been entitled to $200,000 in projected commissions based on anticipated sales. *See Pasternak*, 961 F. Supp. 2d at 597 (precluding testimony of a plaintiff's lost income that consisted of future compensation where it was speculative that the plaintiff would continue to work at the firm long enough to earn those bonuses). |
| Long Term Incentive Plan ("LTIP"). Plaintiff states that she was projected to receive a total of 78,951 shares of unvested YouGov common stock. She notes that the LTIP plan vested at 74% of plan participants' award number, which she claims entitled her to 58,423.74 shares. Plaintiff then assumes that she would have exercised her right to sell these shares almost immediately in order to determine their value ($712,988). | Plaintiff's computation relies on the following assumptions: (1) she would have hit her target award in 2022, (2) the Remuneration Committee of PLC ("RemCo") would have exercised its discretion to issue an award to Plaintiff, (3) RemCo would have exercised its discretion to award Plaintiff 74% of her target, and (4) Plaintiff would have sold her shares at the precise time they had a value of $712,988. (*See* SUF ¶¶ 50-56 (Dkt. 67).] As evidenced by this parade of assumptions, Plaintiff's claim to an LTIP award can hardly be characterized as "capable of measurement based upon known reliable factors without undue speculation." *Schonfeld v. Hilliard*, 218 F.3d at 172; *see also Jaros v. LodgeNet Ent. Corp.*, 171 F. Supp. |

| | 2d 992, 1005 n.2 (D.S.D. 2001), *aff'd*, 294 F.3d 960 (8th Cir. 2002) (denying back pay award based on stock "[b]ecause a value cannot be placed on the stock option without speculating as to whether and when [the plaintiff-employee] would have purchased and sold . . . stock"). |
|---|---|

In addition to the rank speculation identified above, Plaintiff's entire claim for back wages rests on one critical—and implausible—speculation: that she would have continued working at YouGov. To credit Plaintiff's speculation, one would need to ignore that (1) Plaintiff expressed her desire to leave YouGov on numerous occasions, including more than *seventeen months* prior to her resignation; (2) on October 2, 2021, more than *five months* prior to her resignation, Plaintiff confirmed that she was going to resign from YouGov; (3) in fall 2021 and early 2022, Plaintiff engaged in meetings with Playfly about (a) creating a future partnership, (b) employment opportunities, and (c) eventually negotiating and solidifying Plaintiff's terms of employment with Playfly; (4) in early 2022, Plaintiff represented to Playfly that she and Mr. Horowitz had multiple custom research contracts from YouGov that they would transfer to Playfly; (5) on March 8, 2022, prior to her resignation, Plaintiff signed her offer letter accepting employment at Playfly; (6) on March 11, 2022, Plaintiff initiated the incorporation of Vision Sports Properties LLC, which Playfly would purchase from Plaintiff and Mr. Horowitz several weeks later through the Membership Interest Purchase and Assignment Agreement, the terms of which included a Secondary Purchase Price Pool maximum of $4,250,000, split between Plaintiff and Mr. Horowitz, based on their meeting or exceeding the Revenue and EBITDA hurdles contained in the agreement; and (7) on March 16, 2022, *after* accepting employment with Playfly, Plaintiff resigned from YouGov. [(SUF ¶¶ 352-408 (Dkt. 67); (DX-5-8, 12-18, 29-30, 32, 127, 130; JX-44, JX-45, JX-47).]

Plaintiff's support for an award of front pay fares no better. She asserts—without any credible support—that she is entitled to front pay for comprising (1) yearly commissions ($200,000 per year), (2) a *discontinued* Sports bonus ($100,000 per year), and (3) an inflated salary that matches the salary of a position for which she was *underqualified* (CEO – Americas). [(*See* Pl.'s Damages Model (PX-206).] These figures impermissibly arise from Plaintiff's pure speculation and conjecture. *See Rivera v. Baccarat, Inc.*, 34 F. Supp. 2d 870, 878 (S.D.N.Y. 1999) (observing that "under no circumstances" can an award of front pay be based on speculation); *see also Design Strategy, Inc. v. Davis*, 469 F.3d 284, 293-94 (2d Cir. 2006) (quoting District Court judge: "You, the plaintiff, are the one[ ] who [is] asserting the damages. If you assert the damages and you claim that you suffered a certain amount of injury, it is for you, you have the burden of proof on injury and the amounts thereof, and they have to be calculated with reasonable certainty.").

Accordingly, given Plaintiff's speculation-based estimate of her economic damages, the Court should preclude her from offering any evidence of such damages. Evidence of Plaintiff's economic damages is irrelevant under Rule 401 and, even if it is relevant, its relevance is substantially outweighed by the danger that Plaintiff's estimated damages, which are untethered to the record, would mislead the jury, confuse the issues, and unfairly prejudice YouGov. *See* Fed. R. Evid. 401; Fed. R. Evid. 402; Fed. R. Evid. 403.

### G.    Motion *in Limine* Number 7: Plaintiff's Testimony of Her Own Opinion of Her Job Performance and Credentials.

YouGov anticipates Plaintiff will attempt to introduce her own opinion testimony of her job performance, how her job performance should have been evaluated while she was employed at YouGov, and how she was credentialed for the CEO – Americas position. [(*See, e.g.*, Am. Compl., ¶ 22 (Dkt. 20) ("Throughout Schoenadel's employment her performance was excellent."); Pl.'s Resp. to SUF, ¶ 171 (Dkt. 99, 107) (summarizing Plaintiff's credentials and opining on her

job performance at YouGov)).] With respect to Plaintiff's claims, her *own* opinion of her job performance is irrelevant. *See Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980) (observing that terminated employee's "perception of himself . . . is not relevant. It is the perception of the decisionmaker that is relevant"); *Rosen v. Columbia Univ.*, 1995 WL 464991, at * 7 (S.D.N.Y Aug. 7, 1995) ("it is the perception of the decision-maker, and not that of plaintiff, which is relevant") (quoting *Carlton v. Interfaith Medical Ctr.*, 612 F.Supp. 118, 122 (E.D.N.Y. 1985)); *see also Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 602 (7th Cir.2001) ("An *employee's* perception of his own performance . . . cannot tell a reasonable factfinder something about what the *employer* believed about the employee's abilities.").

Admitting Plaintiff's own testimony of her credentials and job performance places the jury in a position to question YouGov's business decisions—a position that is unequivocally contrary to the law. *See Newsom-Lang v. Warren Intern.*, Inc., 80 Fed. Appx. 124, 126 (2d Cir. 2003) (unpublished) ("The law is well-established that federal courts hearing discrimination claims do not 'sit as a super-personnel department' to reexamine a firm's business decisions about how to evaluate the relative merits of education and experience in filling job positions.") (quoting *Scaria v. Rubin*, 117 F.3d 652, 655 (2d Cir.1997) (per curiam); *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988) ("[I]t is not the function of a fact-finder to second-guess business decisions or to question a corporation's means to achieve a legitimate goal.").

Plaintiff's own opinion testimony concerning her credentials and job performance at YouGov is both irrelevant under Rule 401 and, because it invites the jury to second-guess YouGov's nondiscriminatory business decisions, it is unfairly prejudicial under Rule 403. As such, the Court should preclude Plaintiff from offering her own opinion testimony regarding her job performance and credentials at YouGov.

### H. Motion *in Limine* Number 8: Opinion Testimony of Plaintiff's Co-Workers and Subordinates Regarding Her Job Performance.

YouGov also anticipates Plaintiff will offer opinion testimony of her job performance by former YouGov employees who worked with or for Plaintiff in a non-supervisory capacity. [(*See* Deitch Decl., ¶ 8 (Dkt. 91) (describing his experience working for Plaintiff); Horowitz Decl., ¶¶ 4-5 (Dkt. 92) (detailing work experience with Plaintiff); Todd Decl., ¶ 7 (Dkt. 95) (summarizing experience working for Plaintiff); Webb Decl., ¶ 9-11 (Dkt. 96) (explaining experience working for Plaintiff and opining on Plaintiff's qualifications in comparison to those of Mr. Martin); Eddleston Decl., ¶¶ 6-7, 10 (Dkt. 104) (describing perception of Plaintiff's work performance at SMG and YouGov)).] Such testimony, however, should be excluded because *none* of these non-supervisory witnesses have personal knowledge regarding Plaintiff's performance as a whole. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

Moreover, none of these potential witnesses were decisionmakers behind any of the alleged adverse employment actions, and thus they cannot speak with personal knowledge about Plaintiff's job performance, or—more importantly—YouGov's perception of her performance. *See Merritt v. FirstEnergy Corp.*, No. 1:05–cv–00586, 2008 WL 89603, at *1 (N.D. Ohio Jan. 7, 2008) (granting motion in limine, explaining that "[t]estimony by co-workers as to the quality of Merritt's work is not relevant, unless they were part of the decision to terminate Merritt's employment," because "[i]t is the perception of the decision maker which is relevant, and not that of co-workers") (internal quotation marks omitted)); *Dryanski v. Sloan Valve Co.*, No. 84–c–1396, 1986 WL 6951, at *2 (N.D. Ill. June 11, 1986) ("The issue here is whether Dryanski's employer, not his fellow employees, thought Dryanski was performing his job in a satisfactory manner. That Dryanski's co-workers thought he was doing a good job is not probative of the opinion held by Dryanski's

superiors."); *cf. Gulati v. Chao*, No. 17-6271, 2019 WL 4597567, at *8 (D.N.J. Sept. 23, 2019) (stating that the "subjective belief of third-parties," without more, fails to raise an inference of discrimination).

Therefore, any testimony by these non-supervisory, non-decisionmaking coworkers as to their opinion of Plaintiff's job performance should be excluded under Rules 402 and 602.

**I. Motion *in Limine* Number 9: Plaintiff's Testimony as to Her Medical Diagnoses and as to Causation of Any Alleged Non-Economic Injuries.**

YouGov respectfully requests that Plaintiff be precluded from testifying as to any medical diagnoses she received allegedly in connection with her employment at YouGov and about the cause(s) of her medical conditions. [(*See* Pl.'s Resp. to YouGov's Statement of Facts, ¶¶ 598-601 (Dkt. 99, 108) (implying that YouGov's actions toward Plaintiff caused permanent hearing loss in her right ear, a diagnosis of Tinnitus, Unspecified Sensorineural Hearing Loss, and may have contributed to the development of Shingles); Pl.'s Decl. ¶¶ 220, 223-26 (Dkt. 94, 103) (same)).]

Federal Rule of Evidence 701 permits lay witnesses to testify only about opinions that are "rationally based on the witness's perception," and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Medical diagnoses and their causes are highly technical and therefore generally require specialized testimony. *See Barnes v. Anderson*, 202 F.3d 150, 159 (2d Cir. 1999) ("[E]xpert medical opinion evidence is usually required to show the cause of an injury or disease because the medical effect on the human system of the infliction of injuries is generally not within the sphere of the common knowledge of the lay person.") (citations omitted).

Here, because Plaintiff lacks the necessary competency to opine on her diagnoses and their cause(s), the Court should preclude her from testifying on these subjects. *See Singh v. Knuckles, Komosinski & Manfro, LLP*, No. 18-CV-3213 (NSR), 2022 WL 862251, at *3 (S.D.N.Y. Mar. 23,

2022) ("Of course, Plaintiff is precluded from testifying as to medical causations or medical diagnosis, or any issues that require scientific, technical, or other specialized knowledge, which Plaintiff lacks."); *Woolfolk v. Baldofsky*, No. 19CV3815WFKST, 2022 WL 2600132, at *4 (E.D.N.Y. July 8, 2022) ("Because Plaintiff is not qualified to give such testimony, the Court grants Defendant's motion to preclude Plaintiff from testifying about [plaintiff's medical diagnosis and cause of injuries]."); *Vogelfang v. Riverhead Cnty. Jail*, No. 04-CV-1727 SJF AKT, 2012 WL 1450560, at *6 (E.D.N.Y. Apr. 19, 2012) (preventing plaintiff from testifying "as a layperson regarding the diagnosis and prognosis of her injuries, issues on which she was not competent to testify").

### J. Motion *in Limine* Number 10: Premature Evidence of YouGov's Financial Condition as Disclosed in Discovery or in Public Records.

Plaintiff's Amended Complaint includes a prayer for punitive damages. As such, YouGov anticipates that Plaintiff may want to introduce evidence of YouGov's financial condition. This information is irrelevant unless/until punitive damages are deemed appropriate (which they are not). Fed. R. Evid. 401; Fed. R. Evid. 402. Further, the probative value of any such evidence is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403; *see also State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003) ("[E]vidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses.") (quoting *Honda Motor Co. v. Oberg*, 512 U.S. 415, 432 (1994)).

In a similar vein, Plaintiff, her counsel, and her witnesses should be precluded from making any references to YouGov as a "big corporation," Plaintiff as an "underdog," or call attention to the differing financial positions of the parties. The use of such terms serves no other purpose than to invoke a negative and prejudicial reaction from the jury, and therefore such references should be excluded on the grounds that they are irrelevant, highly prejudicial, and calculated to inflame

the jury. *See, e.g.*, *American Technical Ceramics Corp. v. Presidio Components, Inc.*, 2019 WL 2330855, *6 (E.D.N.Y 2019) ("[N]either party will be permitted to refer to the parties' wealth, size, or finances to the extent it is irrelevant and characterizes the dispute as one of David versus Goliath."); *see also City of Cleveland v. Peter Kiewit Sons Co.*, 624 F.2d 749, 757-758 (6th Cir. 1980) (ordering a new trial based on comments aimed at emphasizing to jurors that defendant was a large corporation).

For the above reasons, the Court should exclude: (1) all evidence of YouGov's financial condition unless/until punitive damages are deemed appropriate, which they are not; and (2) any evidence or testimony at trial aimed at emphasizing the disparity in wealth between YouGov and Plaintiff.

## IV. CONCLUSION

For the foregoing reasons, YouGov respectfully requests that the Court grant its Motion *In Limine* in its entirety.

Dated: February 4, 2025

Respectfully submitted,

*/s/ Meghan E. Hill*

Meghan E. Hill (MH1523)
Traci L. Martinez (*pro hac vice*)
SQUIRE PATTON BOGGS (US) LLP
1211 Avenue of the Americas, 26th Floor
New York, New York 10036
Telephone: +1.212 872.9800
Facsimile: +1.212 872 9815
E-mail: meghan.hill@squirepb.com
traci.martinez@squirepb.com

*COUNSEL FOR DEFENDANT YOUGOV AMERICA INC.*

**CERTIFICATE OF SERVICE**

I certify that on February 4, 2025, I electronically filed the foregoing with the United States District Court for the Southern District of New York, which will notify the following parties:

Anne L. Clark
Brandon R. White
VLADECK, RASKIN & CLARK, P.C.
565 Fifth Avenue, 9th Floor
New York, New York 10017
(212) 403-7300
E-mail: aclark@vladeck.com
bwhite@vladeck.com

*Counsel for Plaintiff Tracy Schoenadel*

*/s/ Meghan E. Hill*
Meghan E. Hill (MH1523)
Counsel for Defendant YouGov America, Inc.