

Squire Patton Boggs (US) LLP
1211 Avenue of the Americas
New York, New York 10036

O  +1 212 872 9800
F  +1 212 872 9815
squirepattonboggs.com

Meghan E. Hill
T  +1 212 407 0105
meghan.hill@squirepb.com

March 10, 2025

**VIA ECF**

The Honorable Arun Subramanian
United States District Judge
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007

Re:   *Schoenadel v. YouGov America Inc.*, Case No. 22-CV-10236-AS
       **Defendant's Letter Motion for Reconsideration of April 19, 2024 Sealing Order and Request to Redact Certain Filings**

Dear Judge Subramanian:

Squire Patton Boggs (US) LLP represents Defendant YouGov America Inc. ("YouGov" or "Defendant") in connection with the above-referenced action. Defendant hereby moves the Court for reconsideration of its April 19, 2024 Order denying in part Defendant's request to remove from the public docket and permit Defendant to file in redacted form the Declaration of Jordan Deitch (Dkt. 100), the Declaration of Scott Horowitz (Dkt. 101), the Declaration of Tracy Schoenadel (Dkt. 103), the Declaration of Sara Eddleston (Dkt. 104) (all filed in support of Plaintiff's Response in Opposition to YouGov's Motion for Summary Judgment), as well as Plaintiff's Response to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts and Statement of Additional Material Facts (Dkt. 108), and Plaintiff's Memorandum of Law in Opposition of Defendant's Motion for Summary Judgment (Dkt. 109) (collectively, the "Summary Judgment Requests"). (Dkt. 115.)

Further, in accordance with Your Honor's Individual Rules and Practices, Rule 11(C)(iii), Defendant respectfully asks the Court to redact certain portions of the following filings that post-date the Summary Judgment Requests (collectively, the "Additional Requests"):

- Defendant's Memorandum of Law in Support of Its Motion to Strike (Dkt. 120), including exhibits 1, 2, 3, 4, 5, and 7 (Dkt. 120-1, 120-2, 120-3, 120-4, 120-5, 120-7);
- Defendant's Reply to Plaintiff's Response to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts (Dkt. 122);

Over 40 Offices across 4 Continents

Squire Patton Boggs (US) LLP is part of the international legal practice Squire Patton Boggs, which operates worldwide through a number of separate legal entities.

Please visit squirepattonboggs.com for more information.

- Defendant's Response to Plaintiff's Additional Statement of Facts (Dkt. 124);
- Supplemental Declarations of Ray Martin (Dkt. 126), Alexander McIntosh (Dkt. 127), and Marijana Sarac (Dkt. 129);
- Defendant's Reply in Support of Motion for Summary Judgment (Dkt. 136);
- Defendant's Reply in Support of Motion to Strike (Dkt. 148); and
- Defendant's Memorandum of Law in Support of its Motion *in Limine* (Dkt. 166).

Consistent with Rule 11(C)(iii), the proposed redacted documents have been publicly filed on ECF and electronically relate to this Letter Request and an unredacted version of the documents with the proposed redactions highlighted have been contemporaneously filed under seal on ECF and electronically related to this Letter Request.

As grounds for relief, in light of the Parties' settlement of all claims in this case, the public's qualified right to access judicial documents should now yield to the private interests of innocent third parties. As discussed below, the benefit gained by continued public access to the damaging and unsubstantiated allegations contained in these documents is far outweighed by the detriment such allegations have had—and will continue to have—on the impacted non-parties. Indeed, permitting unfettered access to these unfounded allegations of unlawful activity and arrests has come at the cost of substantial reputational harm and ever-increasing emotional and mental distress. Despite settlement marking the final chapter of this litigation, these individuals—*who were not parties to this case*—must continue their fight to repair their tarnished personal and professional reputations. And this fight is exacting. As a result, these individuals are facing significant psychological and emotional tolls from the ongoing stigmatization, undermining their ability to lead normal lives, both in their communities and within their respective professions. The Court should therefore grant the narrowly tailored requested relief, thereby protecting these third parties from being further victimized by this case.

By way of background, Defendant asked the Court to redact the Summary Judgment Requests because those documents "contained multiple unsupported allegations of drug use, arrests, and affairs of third parties," which implicated the privacy interests of such individuals—interests that may overcome the presumption of public access. (Dkt. 110, 111 (sealed) at 1-2 (citing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006).) The Court agreed only with respect to the alleged affair, concluding that "unlawful activity and arrests are not matters that are 'traditionally considered private,'" and therefore Defendant failed to carry its burden that such information warrants redaction. (Dkt. 115 at 3 (citing *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995).) But by amicably resolving this case, Defendant can now meet its burden on the Summary Judgment Requests as well as the Additional Requests, which similarly seek the redaction of unsubstantiated allegations of drug use and arrests involving non-parties.

In *Amodeo*, the Second Circuit explained the rationale underpinning the public's right to access judicial documents:

> The presumption of access is based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the

> administration of justice. Federal courts exercise powers under Article III that impact upon virtually all citizens, but judges, once nominated and confirmed, serve for life unless impeached through a process that is politically and practically inconvenient to invoke. Although courts have a number of internal checks, such as appellate review by multi-judge tribunals, professional and public monitoring is an essential feature of democratic control. Monitoring both provides judges with critical views of their work and deters arbitrary judicial behavior. Without monitoring, moreover, the public could have no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings. Such monitoring is not possible without access to testimony and documents that are used in the performance of Article III functions.

*Amodeo*, 71 F.3d at 1048. In essence, this "presumption of access" permits those outside the judiciary to monitor how the judiciary wields its power, thereby holding the judiciary accountable for its conduct and instilling in the public "confidence in the administration of justice." *Id.*

This presumption, like any presumption, can be overcome. *Amodeo* instructs lower courts to weigh the presumption of access by balancing "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* at 1049. After weighing these variables, a court must then consider the "countervailing factors" that cut against the presumption of access, such as "the privacy interests of those resisting disclosure." *Id.* at 1050. The Court advised that "embarrassing conduct with no public ramifications," information arising from "personal vendettas," and "unverified information" weigh against public disclosure. *Id.* at 1051.

While the scale tipped in favor of public access in the Court's April 19, 2024 Order, the Parties' settlement has now fundamentally altered this balance, resulting in a recalibration that permits the requested redactions.

To start, the rationale underpinning the public's right to access unredacted versions of the identified materials is inapposite to this now-settled case. Whether the public can learn of alleged unlawful activity and arrests by **innocent third parties** neither bears on the public's accountability function nor bolsters the public's confidence in the "administration of justice." *See id.* at 1048. Moreover, "the value of this information" to the public was always minimal and is now made even more so by the settlement. *See id.* at 1049. Finally, as noted in Defendant's initial request for redactions, the countervailing privacy interests of the impacted third parties outweighs the presumption of public access to this "unverified information" rooted in a "personal vendetta[]."[1] (Dkt. 110, 111 (sealed) at

---

[1] To summarize, Defendant argued that the third-party interests here satisfied all three of *Amodeo's* privacy interest factors. (*See* Dkt. 110, 111 (sealed) at 2 (explaining that *Amodeo* instructs courts to evaluate (1) "the degree to which the subject matter is traditionally considered private rather than public"; (2) the "nature and degree of injury"; and (3) the "reliability of the information.") (citing *Amodeo*, 71 F.3d at 1051).) First, the requested redactions covered drug use and arrests, unquestionably implicating the privacy interests of these individuals. (*Id.*) Second, the unsupported statements regarding the third parties' alleged drug use and arrests contained salacious and

2; *see also Amodeo*, 71 F.3d at 1051.) Indeed, with Plaintiff's claims settled, the third parties' privacy interests have waxed while the public's interest has waned. To illustrate, by settling this case, Defendant has forfeited the opportunity to present proof at trial countering Plaintiff's allegations of drug use and arrests, thereby foregoing any chance to repair the reputational harm incurred by the innocent third parties. *See Amodeo*, 71 F.3d at 1051 (instructing courts to consider whether "there is a fair opportunity for the subject to respond to any accusations contained therein" when balancing a third party's right of privacy). While Plaintiff and Defendant can move on from this litigation, these allegations will be forever tethered to these non-parties. *See id.* at 1050-51 (observing that "[t]he privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation").

Accordingly, given the public's minimal interest in accessing unredacted versions of the Summary Judgment Requests and Additional Requests in this now-settled case, coupled with the strong privacy rights of these innocent third parties, Defendant respectfully asks the Court to reconsider its April 19, 2024 Order and grant Defendant's request for relief.

Respectfully submitted,

Squire Patton Boggs (US) LLP

Meghan E. Hill

*Counsel for Defendant, YouGov America, Inc.*

cc: Counsel of Record (by ECF)

> The motion for reconsideration is DENIED. "The standard for granting a motion for reconsideration is strict," and "[m]otions for reconsideration are generally denied 'unless the moving party can point to controlling decisions or data that the court overlooked--matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Diakite v. USCIS*, 2024 WL 2884047, at *1 (S.D.N.Y. May 14, 2024) (citations omitted). Defendant doesn't identify any new controlling decisions or data. And defendant is wrong that the rationale underpinning the public's right to access judicial documents is entirely undercut by the act of settlement. "For cases that settle, it is up to the public to decide why the case was brought (and fought) and what exactly was at stake in it, including the question of why the case was settled." *Doe 1 v. JP Morgan Chase Bank, N.A.* 742 F. Supp. 3d 387, 396 (S.D.N.Y. July 30, 2024) (citation omitted). The Clerk of Court is respectfully directed to terminate the motion at ECF No. 183.
>
> SO ORDERED.
>
> Arun Subramanian, U.S.D.J.
> Date: March 11, 2025

---

defamatory accusations solely for the purpose of causing reputational harm. (*Id.* (citing *inter alia McLaughlin v. Macquarie Capital (USA) Inc. et al.*, No. 1:17-cv-09023-RA, ECF No. 76 (S.D.N.Y. July 16, 2020) (granting parties' request to redact court documents containing identities of non-parties and salacious and harmful allegations regarding defendant and its employees).) And third, the bulk of the statements at issue were unreliable and inadmissible hearsay, highly likely to "contain misinformation," and therefore militating in favor of redaction. (*Id.* (citing *Amodeo*, 71 F.3d at 1052, and *United States v. Gatto*, No. 17-CR-686 (LAK), 2019 WL 4194569, at *8 (S.D.N.Y. Sept. 3, 2019) (maintaining documents under seal because the documents "consist[] of hearsay, speculation and rumor" regarding innocent third parties)).)